# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BOLD ALLIANCE**
208 S. Burlington Ave., Ste 103, Box 325
Hastings, NE 68901

**BOLD EDUCATIONAL FUND**
208 S. Burlington Ave., Ste 103, Box 325
Hastings, NE 68901

**FRIENDS OF NELSON COUNTY**
P.O. Box 33
Nellysford, VA  22958

**CAROLYN MAKI, WILLIAM MAKI, EJ MAKI**
2228 Rockfish Valley Highway

**JAMES AND KATHERINE MCLEAN**
696 Vance Lane
Warm Springs, VA

**LOUIS & YVETTE RAVINA**
3383 Churchville Ave
Staunton, VA  24401

**RICHARD (DICK) AVERITT III**
On route 151 across from Bold Rock

**WILLIAM S. MOORE AND CAROL M. MOORE
TRUSTEES OF THE MOORE REVOCABLE
TRUST**
2594 Bryant Mountain Road,
Roseland, VA  22967

**HERSHEL AND DARLENE SPEARS**
2215 Spruce Creek Lane,
Nellysford, VA  22958

**JONATHAN ANSELL AND PAMELA
FARNHAM**
159 Fortune's Point Lane,
Roseland, VA 22967

:
:
:
:
:
:
:
:
:
:   Case No.  17-1822
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**LORA & VICTOR BAUM**                       :
368 Fern Gully Lane                          :
Warm Springs, VA 24484                       :
                                             :
**DEMIAN K. JACKSON; BRIDGET K. HAMRE**      :
**(AS MEMBERS OF NELSON COUNTY**             :
**CREEKSIDE, LLC )**                         :
106 Starvale Lane.,                          :
Shipman, VA 22971                            :
                                             :
**HORIZONS VILLAGE PROPERTY OWNERS**         :
**ASSOCIATION**                              :
P.O. Box 122                                 :
Nellysford, VA 22958                         :
Common land and roads within Horizons Village :
Subdivision in Nelson County.                :
No street address.                           :
                                             :
**ANNE AND KEN NORWOOD**                     :
3509 Stagebridge Rd                          :
Lovingston, VA 22949                         :
                                             :
**CAROLYN FISCHER**                          :
184 Mountain Field Trail                     :
Nellysford, VA                               :
                                             :
**PEARL L. FINCH**                           :
Near intersection of NC HWY 581 and Renfrow  :
Road,                                        :
Wilson County, NC                            :
                                             :
**HEATHER LOUISE FINCH**                     :
Near intersection of NC HWY 581 and Renfrow  :
Road,                                        :
Wilson County, NC                            :
                                             :
**WADE RAYMOND FINCH**                       :
near intersection of NC HWY 581 and Renfrow Road, :
Wilson County, NC                            :
                                             :
**RANDY AND KATHLEEN FORBES**                :
TBD Deerfield Rd                             :
Millboro, VA                                 :
                                             :
                                             :
                                             :

**TODD RATH**                                    :
462 Winery Lane                                  :
Roseland, VA 22967                               :
                                                 :
**W. MARVIN WINSTEAD, JR.**                      :
540 Sandy Cross Rd. ,                            :
Nashville, NC 27856                              :
                                                 :
**SUSAN LAZERSON & CLIFFORD SAVELL**             :
14 Crystal Lane,                                 :
Faber,  VA 22938                                 :
                                                 :
**BILL AND LYNN LIMPERT**                        :
250 Fern Gully Lane                              :
Warm Springs, VA 24484                           :
                                                 :
**WADE A. & ELIZABETH G. NEELY**                 :
10190 Deerfield Road,                            :
Millboro, Virginia 24460                         :
                                                 :
**NANCY L AVERY**                                :
195 Flying Eagle Ct.                             :
Nellysford, VA.                                  :
Nelson County Tax Map 21 13 14A                  :
                                                 :
**NANCY & SHAHIR KASSAM-ADAMS**                  :
360 Laurel Lane,                                 :
Lovingston VA 22949                              :
                                                 :
**ROBERT TURNER AND STEPHANIE BARTON**           :
6237 Laurel Rd,                                  :
Faber, VA  22971                                 :
Rt 639 Tax Map 59 A 29 30 31                     :
**JAMES A. HARDEE**                              :
8431 Heathsville Rd.,                            :
Enfield, N.C. 27823                              :
                                                 :
**HAZEL RHAMES (TRUSTEE - JOE RHAMES)**          :
Gullysville Lane                                 :
                                                 :
**JOE POLAND**                                   :
5740 Old Bailey Hwy,                             :
Nashville NC  27856                              :
                                                 :
                                                 :
                                                 :

**DAWN AVERITT**                                        :
330 Grace Glen,                                         :
Nellysford, VA 22958                                    :
                                                        :
**MARY ELLEN RIVES**                                    :
10239 Bottom Creek Road,                                :
Bent Mountain, VA. 24059                                :
                                                        :
**ANNE WAY AND STEPHEN BERNARD**                        :
7879 Grassy Hill Rd                                     :
Boones Mill  VA   24065                                 :
                                                        :
**GEORGIA HAVERTY; DOE CREEK FARM**                     :
412 Doe Creek Farm Road                                 :
                                                        :
**BRENDA LYNN WILLIAMS**                                :
261 Winding Way Drive,                                  :
Newport, VA  24128                                      :
                                                        :
**SERINA GARST, PRESIDENT OF**                          :
**OCCANNEECHI, INC.**                                   :
1600 Cahas Mountain Road (farm land - no actual         :
street address)                                         :
                                                        :
**JERRY & JEROLYN DEPLAZES**                            :
291 Seven Oaks Road,                                    :
Newport VA 24128-3558                                   :
                                                        :
**NEWPORT DEVELOPMENT COMPANY, LLC**                    :
Winding Way Road,                                       :
Newport, VA 24128                                       :
                                                        :
**CLIFFORD A. SHAFFER**                                 :
249 Brookside Lane,                                     :
Newport, VA 24128                                       :
                                                        :
**TAMARA HODSDEN**                                      :
237 Clover Hollow Rd.                                   :
Newport, VA 24128                                       :
                                                        :
**FRANK S AND KATHERINE A QUINN**                       :
215 Zells Mill Rd.,                                     :
Newport, VA 24128                                       :
                                                        :
                                                        :
                                                        :

**CHARLES F FLORA & STEPHANIE M FLORA**                    :
1906 Arden Rd SW                                           :
Roanoke, VA 24015                                         :
                                                           :
**CHARLES F FLORA & STEPHANIE M FLORA**                    :
Cahas Mountain Road;                                      :
Tax Map Id - 038 00-020 02                                :
                                                           :
**BENNY L. HUFFMAN**                                       :
606 Blue Grass Trail,                                     :
Newport, VA 24128-3556,                                   :
Tract # VA-GI-5779                                         :
                                                           :
**IAN ELLIOTT REILLY & CAROLYN**                           :
**ELIZABETH REILLY**                                       :
**AND DAVE J. WERNER & BETTY B. WERNER**                   :
404 Old Mill Creek Lane,                                  :
Rocky Mount, VA 24151                                     :
                                                           :
**MARY E. AND BRUCE M. COFFEY**                            :
10303 Russwood Road,                                     :
Bent Mountain, VA                                        :
                                                           :
**JACQUELINE J. LUCKI**                                    :
10289 Russwood Road,                                     :
Bent Mountain, VA 24059                                  :
                                                           :
**DAVID G. AND KAREN M. YOLTON**                           :
8165 Virginia Ave.,                                      :
Newport, VA 24128                                        :
                                                           :
**CLARENCE B. GIVENS AND KAROLYN W.**                      :
**GIVENS**                                                 :
199 Leffel Lane,                                         :
Newport, VA 24128                                        :
                                                           :
**WALTER AND JANE EMBREY**                                 :
495 Signal Hill Drive,                                   :
Callaway, VA 24067                                       :
                                                           :
**GUY W, AND MARGARET S. BUFORD**                          :
985 Iron Ridge Rd.                                       :
Rocky Mount, VA 24151                                    :
                                                           :
                                                           :
                                                           :

**REBECCA J DAMERON**                                    :
10721 Bent Mountain Road                                 :
Bent Mountain, VA  24059                                 :
                                                         :
**KEITH WILSON**                                         :
887 Labellevue Dr.,                                      :
Boones Mill, VA 24065                                    :
                                                         :
**FRANK AND JACQUELINE BISCARDI**                        :
128 Labellevue Drive                                     :
                                                         :
**WENDELL & MARY FLORA**                                 :
150 Floradale Farms Lane,                                :
Boones Mill, VA 24065                                    :
                                                         :
**REINHARD & ASHOFTEH BOUMAN**                           :
282, Ashwood Dr.,                                        :
Meadow Bridge, WV 25976                                  :
                                                         :
**JAMES GORE**                                           :
6355 Blue Lick Road,                                     :
Greenville, WV 24945                                     :
                                                         :
**MIKE CRAIG**                                           :
5464 Wheelers Cove Rd.                                   :
Shipman, VA 22971                                        :
                                                         :
                                                         :
                **v.**                                   :
                                                         :
                                                         :
**FEDERAL ENERGY REGULATORY**                            :
**COMMISSION**                                           :
888 First Street, N.E.                                   :
Washington D.C. 20426                                    :
                                                         :
and                                                      :
                                                         :
**CHAIRMAN NEIL CHATTERJEE,**                            :
**COMMISSIONER CHERYL LAFLEUR,**                         :
**COMMISSIONER ROBERT POWELSON** in their                :
official capacities                                      :
as Commissioners of the Federal Energy                   :
Regulatory Commission                                    :
888 First Street, N.E.                                   :
Washington D.C. 20426                                    :

**MOUNTAIN VALLEY PIPELINE**                        :
Serve Registered Agent:                             :
CT Corporation System                               :
4701 Cox Road Ste. 285                              :
Glen Allen, VA 23060                                :
                                                    :
**ATLANTIC COAST PIPELINE LLC**                     :
CT Corporation System                               :
4701 Cox Road Ste. 285                              :
Glen Allen, VA 23060                                :
                                                    :

DEFENDANTS

---

**PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Bold Alliance, Bold Educational Fund, Friends of Nelson, and the named individual landowners file this complaint against Defendants Federal Energy Regulatory Commission (FERC); FERC Chairman Neil Chatterjee and FERC Commissioners Cheryl LaFleur and Robert Powelson in their official capacities; Mountain Valley Pipeline, LLC; and Atlantic Coast Pipeline LLC. Plaintiffs allege and pray as follows:

## INTRODUCTION

1.     In the eighty years since the Natural Gas Act was enacted, the industry has changed dramatically, moving from a heavily regulated enterprise subject to strict oversight by regulators to a deregulated market dominated by unregulated players in search of lucrative opportunities including spot market sales, participating in gas commodities markets and export. Yet while the role of interstate pipelines and the nature of the gas industry has changed, the eminent domain provisions of the Natural Gas Act have not.  In light of changes in the gas industry and the evolution of FERC policies and practices related to regulation of pipelines, the eminent domain provisions of the Natural Gas Act and FERC's Certificate Program no longer further a public use and or satisfy constitutional requirements.  A challenge is long overdue.

2.    This lawsuit challenges the process by which FERC confers eminent domain powers on private, for-profit natural-gas pipeline companies. Under Section 7f(h) of the Natural Gas Act (15 U.S.C. §§717 *et seq.*), any company that obtains a "certificate of convenience and necessity" ("CCN") from FERC has the power to condemn. The only way this arrangement can satisfy statutory requirements and the Constitution is if FERC provides procedural due process to condemnees and grants certificates only those projects that serve a "public use."

3.    FERC's certificate program falls short in numerous ways:

- FERC does not require pipeline companies to demonstrate their projects serve a public use.

- FERC grants not only CCNs but also "conditioned certificates" and "blanket certificates," which are not statutorily authorized and which give pipeline companies eminent-domain powers far beyond constitutional limits.

- FERC's standard of proof for "project need" is so low as to be meaningless; indeed, FERC effectively waives it in cases where pipeline companies obtain right-of-way before CCNs, thereby incentivizing those companies to wring easements out of landowners by any means necessary.

- FERC withholds information from landowners that they could use to refute project need.

- FERC does not require companies to post bonds or otherwise demonstrate sufficient assets before commencing projects, thus creating a risk that those private, for-profit companies will not actually and ultimately pay constitutionally mandated just compensation for the property they take.

4. Collectively, these shortcomings—and others—entail that FERC's certificate program violates the Due Process Clause and Takings Clause of the Fifth Amendment, resulting in a delegation of extraordinary eminent domain powers to private companies far beyond what Congress ever intended and an assault on landowners' constitutionally protected property rights.

5. These shortcomings impact the landowner Plaintiffs in this case personally. Here, the individual Plaintiffs along with members of Plaintiff BOLD Alliance face imminent condemnation for two pipeline projects—the proposed Atlantic Coast Pipeline ("ACP") and Mountain Valley Pipeline ("MVP")—that do not serve a public use.

6. The purported public use of the ACP and MVP projects is "interstate transportation of natural gas . . . for ultimate distribution to the public." 15 U.S.C. §717(a). But the projects do not actually meet this standard.

- The MVP Project does not meet this standard because it will transport gas for export, not for ultimate distribution to the American public.

- The ACP Project does not meet this standard because it will deliver gas exclusively to utilities that are affiliates of ACP's owners.

3

7.     This lawsuit seeks a declaration that FERC's certificate program as implemented violates the Natural Gas Act and the U.S. Constitution. It also seeks declarations that the MVP and ACP do not serve public uses. As relief, Plaintiffs ask the Court to enjoin FERC from awarding any certificates under its flawed program, including certificates for the MVP and ACP. Unless the Court grants this relief, Plaintiffs and others similarly situated will have their statutory protections and constitutional rights violated.

## JURISDICTION AND VENUE

8.     This action arises under the Due Process Clause and Takings Clause of the Fifth Amendment to the United States Constitution. It also arises under the Natural Gas Act, 15 U.S.C. §717f(h). Accordingly, the Court has jurisdiction under 28 U.S.C. §1331. The Court also has jurisdiction under 15 U.S.C. §717u, which establishes exclusive jurisdiction in federal district courts for violations of the Natural Gas Act and rules and regulations arising thereunder.

9.     Plaintiffs seek a declaratory judgment under the federal Declaratory Judgments Act, 28 U.S.C. §2201-2202, and appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

10.     Venue is proper in the federal district court for the District of Columbia pursuant to 28 U.S.C. §1391(e)(1)(A) and 15 U.S.C. §717u. Defendant FERC is an agency of the United States and resides in this judicial district, while Mountain Valley LLC and Atlantic Coast Pipeline LLC have submitted to the processing of its certificate application in the District of Columbia.

4

11.     The individually named landowners have standing to bring this action because they own realty in the path of the MVP and ACP Projects.  Their realty will be subject to eminent domain once the projects are certificated. Moreover, several of the landowner Plaintiffs have received threats of condemnation from land agents trying to strong-arm them into granting easements.

12.     Plaintiff Bold Appalachia has organizational standing because its members are directly impacted by the MVP and ACP projects and have individual standing to sue.

13.     This Court can and must act now to grant the declaratory and injunctive relief Plaintiffs seek because, without it, FERC will continue to award statutorily and constitutionally deficient certificates—and pipeline companies will continue to use those certificates to abuse their eminent-domain power. Moreover, MVP and ACP will continue trying to intimidate landowners into granting easements so that the companies can avoid having to demonstrate genuine public need and public use for their projects.

14.     FERC's granting of certificates—and therefore condemnation power—for the MVP and ACP Projects is virtually certain and imminent. FERC has completed the Final Environmental Impact Statement (FEIS), which is the last step before certification. Once the 90-day deadline for receipt of federal authorizations has passed, FERC can grant the certificates. The MVP certification can issue any time September 21, 2017, while the ACP certificate can issue any time after October 21, 2017.

15.     That the certificates have not yet issued is inconsequential, as FERC grants certificates to nearly 100% of applicants. FERC's approval ratio "is high enough to state

a likelihood of approval" for purposes of demonstrating aggrievement. *Del. Riverkeeper Network v.* FERC, No 16-cv-416 (TSC), 2017 WL 1080929, at *6 n.2 (D.D.C. Mar. 22, 2017) (holding that landowners have standing to challenge constitutionality of FERC's certificate programs). The United States Supreme Court allows "individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *See Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59 (1978) (allowing declaratory relief for potential taking).

## PARTIES

### I.    Plaintiffs

16.    Plaintiff Bold Education Fund is a 501(c)(3) organization formed under Nebraska law and formed to educate the public about eminent domain issues, protection of water and climate. The Bold Education Fund includes as members landowners in the Appalachia Region whose property will be subject to eminent domain by the MVP and ACP Projects, including some of the individually named landowners in this suit.

17.    The Bold Alliance is a 501(c)(4) organization formed under Nebraska Law that advocates on behalf of impacted landowners and the general public to stop the use of eminent domain for private gain.

18.    Plaintiff Friends of Nelson is a citizen-run, community-based, membership organization dedicated to the protection of property rights, property

values, rural heritage and the environment for all the citizens of Nelson County, Virginia.

19.     The individual landowners in this proceeding are: Carolyn Maki and William Maki; James and Katherine McLean; Louis & Yvette Ravina; Richard Averitt III; William S. Moore and Carol M. Moore (Trustees of the Moore Revocable Trust); Hershel and Darlene Spears; Jonathan Ansell and Pamela Farnham; Lora and Victor Baum; Demian K. Jackson and Bridget K. Hamre (members of Nelson County Creekside, LLC); Horizons Village Property Owners Association; Anne and Ken Norwood; Carolyn Fischer; Pearl L. Finch; Heather Louise Finch; Wade Raymond Finch; Randy and Kathleen Forbes;  Todd Rath; W. Marvin Winstead Jr.; Susan Lazerson and Clifford Savell; Bill and Lynn Limpert; Wade A. and Elizabeth G. Neely; Nancy L. Avery; Nancy & Shahir Kassam-Adams; Robert Turner; Stephanie Barton, James A. Hardee; Hazel Rhames (Trustee- Joe Rhames); Joe Poland; Dawn Averitt; Mary Ellen Rives; Anne Way and Stephen Bernard; Georgia Haverty - Doe Creek Farm; Brenda Lynn Williams; Serena Garst, President of Occanneechi, Inc; Jerry & Jerolyn Deplazes; Newport Development, LLC; Clifford A. Shaffer; Tamara Hodsden; Frank S. and Katherine A. Quinn; Charles F. Flora and Stephanie Flora; Benny L. Huffman; Ian Elliott Reilly and Carolyn Elizabeth Reilly and Dave J. Werner and Betty B. Werner; Mary E. and Bruce M. Coffey; Jacqueline J. Lucki; David G. and Karen M. Yolton; Clarence B. Givens and Karolyn W. Givens; Walter and Jane Embrey; Guy W. and Margaret S. Buford; Rebecca

Dameron; Keith Wilson; Frank and Jacqueline Biscardi; Wendell & Mary Flora; Reinhard and Ashofteh Bouman; James Gore; and Mike Craig.[1]

20.    All of these individual landowners own property that will be crossed by the MVP and ACP Projects Atlantic Coast Pipeline and will be taken through eminent domain under Section 717f(h) of the Natural Gas Act.  Alternatively, their property has already been taken or been threatened with taking by MVP or ACP. These threats have been enabled by FERC, which has a practice of encouraging and rewarding pipeline companies that acquire property before obtaining CCNs. This practice has incentivized MVP and ACP to threaten eminent domain to pressure landowners to sign overly broad easement agreements for consideration that falls far short of constitutionally mandated just compensation.

21.    The MVP and ACP will harm Plaintiffs' health, safety, and surrounding environment and, as a result, will decimate property values and impede economic growth in the affected areas.

## II.    Defendant Federal Energy Regulatory Commission

22.    Defendant Federal Energy Regulatory Commission is an independent agency formed under 42 U.S.C. §7171. As of the date of this Complaint, the Commission consists of Acting Chairman Neil Chatterjee and Commissioners Cheryl LaFleur and Robert Powelson.

---

[1] Attachment A to this Complaint lists each landowner's address, the pipeline that will cross their respective property and amount of property that will be impacted by condemnation.

8

23.     The Commission claims authority under the Natural Gas Act to issue CCNs to companies that propose to construct, operate, and maintain interstate natural gas pipelines.

### III.     Defendant Mountain Valley Pipeline LLC

24.     Defendant Mountain Valley Pipeline LLC is a private, for-profit limited liability company organized and existing under the laws of Delaware. Mountain Valley is a joint venture between EQT Midstream Partners, LP; NextEra Energy US Gas Assets, LLC; WGL Midstream, Inc.; Vega Midstream MVP LLC; RGC Midstream, LLC and Con Edison Gas Midstream. Mountain Valley was formed to develop the MVP.

### IV.     Defendant Atlantic Coast Pipeline LLC

25.     Defendant Atlantic Coast Pipeline LLC (Atlantic Coast) is a private, for-profit limited liability company organized under the laws of Delaware with its principal place of business in Richmond, Virginia. Atlantic Coast is a joint venture of Dominion Resources (which has a 45% interest in the venture), Duke Energy (40%), Piedmont Natural Gas Company (10%) and AGL Resources (5%). Atlantic Coast was formed to develop the ACP.

## FACTUAL BACKGROUND

### I.     FERC's Regulatory Policies

#### A.     Overview

26.     FERC oversees natural gas companies, which the Natural Gas Act defines as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. §717(c). FERC's

responsibilities include rate-setting, oversight, and, critically, issuance of CCNs authorizing construction and operation of interstate gas pipelines. By statute, any entity that receives a CCN automatically has the power of eminent domain. 15 U.S.C. §717f(h). While the Natural Gas Act confers eminent-domain power on pipelines operating in interstate commerce, it does not confer eminent-domain power on pipelines operating in foreign commerce.

### B. No Public Use Requirement

27.   Because eminent domain attaches to every "holder of a certificate of convenience and necessity" under Section 7f(h) of the Natural Gas Act, the constitutionality of the eminent domain provisions hinges on whether a certificate issued by FERC serves a public use. By its own admission, however, FERC does not consider a determination of "public use" to be a necessary part of a grant of a certificate. *See Transcontinental Pipeline*, 158 FERC ¶ 61,125 (2017).

28.   In 1999, FERC adopted its Certificate Policy Statement,[2] which memorialized FERC's process for evaluating applications for CCNs. As the Certificate Policy Statement sets out, FERC first determines whether there is a need for the project, examining factors including market demand, the amount of pipeline capacity contractually committed, and lack of subsidization by existing ratepayers. FERC's review of need is superficial at best, as FERC does not "look behind precedent agreements" (*See e.g., Transcontinental Gas Pipe Line Co. LLC*, 157 FERC ¶ 61,095, at P.

---

[2] *Certification of New Interstate Natural Gas Pipeline Facilities,* 88 FERC ¶ 61,227 (1999), clarified, 90 FERC ¶ 61,128, further clarified, 92 FERC ¶ 61,094 (2000) (Certificate Policy Statement).

5 (2016)) even though the Certificate Policy Statement suggests that affiliate contracts are less probative than those negotiated at arms' length.

29.    Finally, FERC balances the project's benefits against project impacts to the environment and landowners, using a sliding scale approach to determine whether to grant a certificate. In no part of the review process does FERC examine whether a proposed project will actually serve a "public use."

### C.    Incentive to Strong-Arm Landowners

30.    FERC's policies create perverse incentives for pipelines to acquire properties by any means necessary as early as possible—well before they complete the CCN application process. As the Certificate Policy explains:

> [I]f project sponsors, proposing a new pipeline company, are able to acquire all, or substantially all, of the necessary right-of-way by negotiation prior to filing the application, and the proposal is to serve a new, previously unserved market, . . . *[s]uch a project would not need any additional indicators of need and may be readily approved if there are no environmental considerations.*[3]

By focusing on the percentage of easements acquired, the Certificate Policy Statement improperly relieves FERC of its obligation to determine the need for a project prior to granting a certificate and encourages an "irretrievable commitment of resources" by the Applicant to its preferred route early in the process.

### D.    No Bond or Asset Requirement

31.    FERC does not require applicants to post bond or to demonstrate assets sufficient to ensure payment of just compensation to landowners. In fact, FERC has

---

[3] Certificate Policy Statement at 27 (emphasis added).

explicitly refused requests to condition issuance of a certificate on the project sponsor's posting bond or proving adequate assets. Accordingly, landowners receive no assurance that the private, for-profit entities condemning them will actually pay and ultimately be able to pay just compensation.

### E.    Extra-Statutory Certificate Programs

32.    FERC has also implemented "conditioned" and "blanket certificate" programs that are not expressly authorized by the Natural Gas Act.

#### 1.    Conditioned Certificates

33.    Conditioned certificates are nominally issued under Section 7f(e) of the Natural Gas Act, which grants FERC the power to "attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." As a matter of practice, however, FERC routinely includes a standard condition in most certificates that states:

> Prior to receiving written authorization . . . to commence construction of any project facilities, [the applicant] shall file with the Secretary documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof.)

In other words, FERC routinely grants certificates for projects that are not yet legally authorized because they depend on the subsequent grant of additional permits by other federal and state agencies.

34.    Although FERC characterizes conditioned certificates as "incipient authorizations without force or effect," (*See e.g., Ruby Pipeline LLC*, 133 FERC ¶61,015

(2010) at P. 18),  it interprets those certificates as conferring the same power of eminent domain as non-conditioned certificates. FERC has, in fact, expressly refused to restrict eminent domain powers under conditioned certificates even though they relate to projects that may never be constructed at all.

### 2.    Blanket Certificates

35.    Pipeline companies can also request "blanket certificate" authority. *See* 18 C.F.R. Part 157, Subpart F. As originally conceived by FERC, **the blanket certificate program was intended to enable a natural gas company to undertake repairs and various** routine activities without the need to obtain a case-specific certificate for each individual project.

36.    In practice, however, companies have used blanket certificate authority for activities that fall well outside the definition of "routine" as that term is ordinarily understood—including construction of lateral lines, new compressor stations, and other facilities that may extend up to fifteen miles from a certificated project, impact previously unaffected properties, and serve entirely new purposes. When these activities occur under a blanket certificate, they may proceed with minimal notice to landowners and without any finding that the expansions will serve the public convenience.

## II.    The ACP

37.    The ACP Project consists of (1) approximately 564 miles of 42-inch diameter pipeline in West Virginia, Virginia, and North Carolina; (2) three new compressor stations providing approximately 125,000 nominal horsepower (hp) of

compression; and (3) other minor facilities. *See* ACP Application at 14-15. The ACP pipeline will have numerous delivery and receipt points to serve shippers. According to ACP's application, the pipeline will carry up to 1.5 million dekatherms/day, bringing gas from the Marcellus region of northern West Virginia Project to Virginia and North Carolina.

38.     As the ACP pipeline makes its way through West Virginia, Virginia, and North Carolina, it will traverse mountainous topography and karst-ridden terrain, cut large swaths through hundreds of acres of forest (including the Monongahela National Forest (MNF) and George Washington National Forest (GWNF)), cross more than 1,500 water bodies, and adversely impact wildlife habitat and endangered species. In addition to its substantial and devastating environmental impacts, the ACP pipeline will jeopardize the safety and economic livelihood of landowners in its path, assaulting their statutorily and constitutionally protected private property rights by taking hundreds of tracts of property for a private enterprise bent on exerting monopoly control over energy supply in the Southeast region.

39.     In October 2015, ACP applied to FERC for a CCN and a blanket certificate. At the time of application, 96% of ACP's capacity was already subscribed. The contracts for this capacity are with utility companies that are subsidiaries of the ACP's joint venturers, as shown below:

Table 1. Utilities contracted to ship gas on the Atlantic Coast Pipeline. All but Public Service Company of North Carolina are subsidiaries of companies involved in developing the pipeline.

| Utility | Parent | Contracted capacity (dekatherms/day) |
|---|---|---|
| Virginia Power Services | Dominion | 300,000 |
| Duke Energy Progress | Duke | 452,750 |
| Duke Energy Carolinas | Duke | 272,250 |
| Piedmont | Piedmont Natural Gas | 160,000 |
| Public Service Company of North Carolina | SCANA Corporation | 100,000 |
| Virginia Natural Gas | AGL Resources | 155,000 |

40.     On December 30, 2016, FERC released a draft environmental impact statement (DEIS). As relevant here, the DEIS urged companies to "reach mutual agreements with all landowners"—and ACP land agents routinely advise property owners that even FERC encourages consummation of an easement agreement before FERC's final decision on ACP's CCN application.

41. In May 2017, the Landowners attempted, through the Freedom of Information Act (FOIA) and FERC's Critical Energy Infrastructure Information (CEII) rules, to obtain additional documents that would further corroborate the project's intended use for gas exports. FERC failed to timely process their requests, which remain pending.

42.     On July 21, 2017, FERC issued a favorable Final Environmental Impact Statement (FEIS) for the ACP Project. Given the favorable FEIS and FERC's near-100% approval record, a grant of a CCN and a blanket certificate to ACP are both imminent and certain.

43.     Likewise, it is both imminent and certain that the certificates granted will be conditioned on receipt of federal and state authorizations, given that at least 13 of the required state and federal approvals necessary for construction of the ACP Project

15

were outstanding as of July 2017, and ACP had not even applied for at least 10 other required federal and state permits. It is unlikely that these permits will issue by the October 2017 deadline for federal authorizations—but ACP will have eminent-domain power anyway.

44.     In addition to the missing federal and state permits, there are other pending issues involving ACP and its affiliates that may affect the ACP Project's future. For example, the Federal Trade Commission has been asked to investigate the antitrust implications of the ACP, as it owners will have monopoly control of regional gas supply if the project goes through. Several similar challenges are pending before state regulators. All these ongoing investigations and complaints have the potential to delay or doom the ACP—but they may not conclude before FERC issues a CCN.

45.     Once FERC grants a certificate, ACP can and will initiate eminent domain proceedings against landowners in state or federal district court under Section 7f(h) of the Natural Gas Act, 15 U.S.C. §7f(h) seeking immediate possession of the property in advance of payment of compensation.

III.    The MVP

46.     The MVP Project consists of (1) approximately 301 miles of 42-inch diameter pipeline in West Virginia and Virginia; (2) three new compressor stations providing approximately 171,600 nominal horsepower (hp) of compression; and (3) other minor facilities. The MVP pipeline extends from an interconnection with Equitrans's existing pipeline in Wetzel County, West Virginia to a termination point at

Transco's Zone 5 Compressor Station 165 (which is also a gas-trading hub for the mid-Atlantic) near Transco Village in Pittsylvania County, Virginia.

47.     As the MVP pipeline makes its way through the mountainous topography of West Virginia and Virginia, it will cut large swaths through hundreds of acres of forest, cross more than 1,000 bodies of water, and traverse miles of treacherous karst-laced terrain. In addition to its substantial and devastating environmental impacts, the MVP pipeline will jeopardize the safety and economic livelihood of landowners along its path, assaulting their statutorily and constitutionally protected private property rights by taking hundreds of tracts of property for a private enterprise.

48.     In late October 2014, MVP initiated the pre-filing application process, an informal review period that enables a project sponsor to "vet" its proposal. At that time, MVP began contacting landowners to survey the properties to assist in preparation of its application and in some instances, to initiate negotiations on easement rights for the proposed pipeline.

49.     On October 23, 2015, following the conclusion of the pre-application process, MVP submitted its application under Section 7 of the Natural Gas Act seeking a certificate of public convenience and necessity to construct, operate, and maintain the MVP project as well as a blanket certificate. In its application, MVP declared that its primary purpose for constructing the pipeline is to deliver shale gas to Transco Station 165, a gas-trading hub for the Mid-Atlantic Market and a strategic point for serving the growing Mid-Atlantic and southeastern markets, as well as unidentified "existing and future markets" directly along the pipeline route.

17

50.     At or around the time MVP filed its Application, its proposed pipeline was fully subscribed by affiliated shippers who are either producers and marketers (accounting for 87 percent of contracted capacity) or affiliate utilities (committed to 13 percent of contracted capacity) as summarized in the table below:

**Table 2. All of the shippers on the Mountain Valley Pipeline are affiliates of companies involved in developing the project.**

| Pipeline owner | Ownership interest | Shipper | Capacity contracted (dekatherms/day) | Capacity contracted (%) |
|---|---|---|---|---|
| EQT Midstream Partners, LP | 45.5% | EQT Energy, LLC | 1,290,000 | 64.5% |
| NextEra Energy US Gas Assets, LLC | 31% | USG Properties Marcellus Holdings, LLC | 250,000 | 12.5% |
| Con Edison Gas Midstream, LLC | 12.5% | Consolidated Edison Company of New York | 250,000 | 12.5% |
| WGL Midstream, Inc. | 7% | WGL Midstream, Inc. | 200,000 | 10% |
| Vega Midstream MVP LLC | 3% | | | |
| RGC Midstream LLC | 1% | Roanoke Gas Company | 10,000 | 0.5% |

51.     Following the filing of its FERC Application, MVP stepped up efforts to contact landowners and negotiate easements.

52.     On September 16, 2016, FERC released a draft environmental impact statement (DEIS). As relevant here, the DEIS urged companies to "reach mutual negotiated easement agreements with all landowners"—and MVP land agents routinely advise property owners that even FERC encourages consummation of an easement agreement before FERC's final decision on the certificate. As of January 2017, MVP had negotiated 1,250 easement agreements along the route, or roughly 70% of the acreage required. *Id.*

53.     The DEIS also concluded that the project would not export gas, notwithstanding comments that had identified a contract between WGL Midstream,

18

one of the project shippers, to supply an Indian company with 430,000 dt/day of LNG gas.

54.     In May 2017, the Landowners attempted, through the Freedom of Information Act (FOIA) and FERC's Critical Energy Infrastructure Information (CEII) rules, to obtain additional documents that would further corroborate the project's intended use for gas exports. FERC failed to timely process their requests, which remain pending.

55.     On June 23 2017, FERC issued a Final Environmental Impact Statement for the MVP Project. Given the favorable FEIS and FERC's near-100% approval record, a grant of a certificate and a blanket certificate to MVP by the September 21, 2017 target date are both imminent and certain.

56.     Likewise, it is both imminent and certain that the certificates granted will be conditioned on receipt of federal and state authorizations, given that 25 required state and federal approvals necessary for construction of the MVP Project were outstanding as of June 2016 and that many of these necessary approvals will not issue by September 21, 2017.

57.     Once FERC grants a certificate, MVP can and will initiate eminent domain proceedings against landowners in state or federal district court under Section 7f(h) of the Natural Gas Act, 15 U.S.C. §7f(h) seeking immediate possession of the property in advance of payment of compensation.

## CAUSES OF ACTION

**COUNT 1:   Declaratory Judgment That Certificate Holders Do Not Possess the Power of Eminent Domain at Least Until Congress or FERC Finds That the Takings for the Project Covered by the Certificate Is for a Public Use.**

58.     Plaintiffs incorporate the allegations in paragraphs 1 through 57.

59.     The Takings Clause of the Fifth Amendment requires that takings of private property must be for a "public use."

60.     Congress has not declared that the takings required for the MVP or ACP projects, which give Plaintiffs standing here, are for a public use.

61.     Moreover, FERC has not declared that such takings are for a public use, and neither the Natural Gas Act nor FERC policies actually require FERC to make a determination of public use.

62.     Plaintiffs seek a declaratory judgment that certificate holders do not possess the power of eminent domain at least until Congress or FERC actually finds that the takings for projects covered by a FERC certificate are for a public use.

**COUNT 2:   Declaratory Judgment That, Under the Natural Gas Act, FERC Cannot Grant Certificates Whose Sole or Primary Purpose Is to Benefit Foreign Commerce.**

63.     Plaintiffs incorporate the allegations in paragraphs 1 through 62.

20

64.     Under section 717f of the Natural Gas Act, any certificate of convenience and necessity must be for the transportation "in interstate commerce" of natural gas.

65.     The Act defines "interstate commerce" as commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof, but only insofar as such commerce takes place within the United States."

66.     Plaintiffs seek a declaratory judgment that the Natural Gas Act does not allow FERC to grant certificates of convenience and necessity whose sole or primary purpose is to benefit foreign commerce.

**COUNT 3:     Declaratory Judgment That FERC Cannot Grant Certificates Whose Sole or Primary Purpose Is to Benefit Foreign Commerce, as Benefitting Foreign Commerce Is Not a Valid "Public Use" Under the Fifth Amendment's Takings Clause.**

67.     Plaintiffs incorporate the allegations in paragraphs 1 through 66.

68.     Plaintiffs seek a declaratory judgment that FERC cannot grant certificates of convenience and necessity whose sole or primary purpose is to benefit foreign commerce, as benefitting foreign commerce is not a valid "public use" under the Takings Clause of the Fifth Amendment.

21

**COUNT 4:    Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority via a Certificate Conditioned on Subsequent State and Federal Approvals Violates the Natural Gas Act, Specifically §717f's Requirement That Takings Be "Necessary."**

69.     Plaintiffs incorporate the allegations in paragraphs 1 through 68.

70.     Section 717f of the Natural Gas Act gives FERC "the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

71.     As a general and fundamental principle, the exercise of the sovereign power of eminent domain is within the legislative power of Congress.

72.     Congress did not delegate the power of eminent domain to private entities that have failed to obtain the necessary state and federal approvals for the construction of natural-gas pipelines.

73.     FERC has an established pattern and practice of issuing certificates of public convenience and necessity for pipelines that are conditioned on subsequent state and federal approvals.

74.     Even so, FERC's pattern and practice is to issue certificates of public and convenience and necessity that allow the certificate holder to exercise the right of eminent domain before such state and federal approvals have been granted.

75.     Plaintiffs seek a declaratory judgment that FERC's practice of delegating eminent domain authority to holders of such conditional certificates of public convenience and necessary violate the Natural Gas Act.

**COUNT 5:    Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority via a Certificate Conditioned on Subsequent State or**

22

**Federal Approvals Violates Procedural-Due-Process Rights of All Potential Condemnees Under the Fifth Amendment's Due Process Clause.**

76.    Plaintiffs incorporate the allegations in paragraphs 1 through 75.

77.    Plaintiffs seek a declaratory judgment that FERC's practice of delegating eminent domain authority via a certificate conditioned on subsequent state or federal approvals violates the procedural-due-process rights of Plaintiffs and all potential condemnees under the Fifth Amendment's Due Process Clause.

**COUNT 6:    Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority via a Certificate Conditioned on Subsequent State or Federal Approvals Violates Plaintiffs' Substantive Rights Under the "Public Use" Requirement of the Fifth Amendment's Takings Clause.**

78.    Plaintiffs incorporate the allegations in paragraphs 1 through 77.

79.    Plaintiffs seek a declaratory judgment that FERC's practice of delegating eminent domain authority via a certificate conditioned on subsequent state or federal approvals violates Plaintiffs' substantive rights under the Fifth Amendment's Takings Clause by authorizing takings that have not been determined to be necessary and for a "public use."

**COUNT 7:    Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority via a Certificate Conditioned on Subsequent State or Federal Approvals Violates Constitutional Separation-of-Powers Principles, Including the Private Nondelegation Doctrine.**

80.    Plaintiffs incorporate the allegations in paragraphs 1 through 79.

81.    Article I, Section 1 of the U.S. Constitution vests "[a]ll legislative Powers" in Congress and bars the delegation of legislative power.

23

82.     As a general and fundamental principle, the exercise of the sovereign power of eminent domain is within the legislative power of Congress.

83.     The two other Vesting Clauses of the Constitution vest governmental power, respectively, in (i) the President and his or her agents or (ii) the Supreme Court and inferior courts established by Congress.

84.     MVP and ACP are private entities that are "neither Congress, nor the President or one of his agents, nor the Supreme Court or an inferior court established by Congress."[4]

85.     Even so, MVP and ACP seek to exercise a core legislative power of eminent domain without a specific delegation of that awesome power from the legislature and without obtaining the required government approvals.

86.     Plaintiffs seek a declaratory judgment that MVP and ACP's exercise of eminent domain violates constitutional separation-of-powers principles, including the private nondelegation doctrine.

**COUNT 8:   Declaratory Judgment That, Under the Natural Gas Act or FERC Policy, Certificate Holders Do Not Possess the Power of Eminent Domain if Their Certificates Are Conditioned on the Receipt of Federal or State Approvals.**

87.     Plaintiffs incorporate the allegations in paragraphs 1 through 86.

88.     Section 717f(h) of the Natural Gas Act purports to allow certificate holders to acquire certain property rights for the construction, operation, or maintenance of a natural-gas pipeline.

---

[4] *Dep't of Transp. v. Ass'n of Am. R.Rs.*, 135 S.Ct. 1225, 1252 (2015) (Thomas, J., concurring in the judgment).

89.     Even so, FERC characterizes certificates conditioned on the receipt of required federal and state permits as an "incipient authorization without force or effect."

90.     Plaintiffs seek a declaratory judgment that, under the Natural Gas Act or FERC policy (or both), certificate holders do not possess the power of eminent domain if their certificates are conditioned on the receipt of federal or state approvals.

**COUNT 9:     Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority in Excess of Demonstrated Need Pursuant to "Blanket Certificates" Exceeds FERC's Statutory Authority Under the Natural Gas Act.**

91.     Plaintiffs incorporate the allegations in paragraphs 1 through 90.

92.     Plaintiffs seek a declaratory judgment that FERC's practice of delegating eminent domain authority in excess of a certificate holder's demonstrated need pursuant to one or more "blanket certificates" exceeds FERC's statutory authority under the Natural Gas Act.

**COUNT 10:   Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority in Excess of Demonstrated Need Pursuant to "Blanket Certificates" Violates the Natural Gas Act's Requirements of Notice and Hearing on Expansions Not Contemplated in Initial Applications.**

93.     Plaintiffs incorporate the allegations in paragraphs 1 through 92.

94.     Section 717f(a) of the Natural Gas Act requires "necessary" expansions and improvements ordered under the Act to be issued "after notice and opportunity for hearing" to all interested persons.

95.     Further, section 717f(c) of the Act requires a certificate of convenience and necessity for all acts and operations, including the construction and operation of any

25

facilities or extensions thereof: "No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations."

96.     Acts and operations, including the construction and operations of any facilities or extensions thereof, authorized under the Act are subject to the notice and hearing requirements of section 717f(c), except that the Commission may issue temporary certificates in cases of emergency.

97.     Plaintiffs seek a declaration FERC's practice of delegating eminent domain authority in excess of demonstrated need pursuant to "blanket certificates" violates the Act's requirements of notice and hearing on expansions not contemplated in initial applications.

**COUNT 11:  Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority to Take Plaintiffs' Property in Excess of Demonstrated Need Pursuant to "Blanket Certificates" Violates Plaintiffs' Procedural-Due-Process Rights Under the Natural Gas Act.**

98.     Plaintiffs incorporate the allegations in paragraphs 1 through 97.

99.     Plaintiffs seek a declaratory judgment that FERC's practice of delegating eminent domain authority to take Plaintiffs' property in excess of demonstrated need

pursuant to "blanket certificates" violates the procedural-due-process rights of Plaintiffs and other interested parties under the Natural Gas Act.

**COUNT 12:   Declaratory Judgment That FERC's Practice of Delegating Eminent Domain Authority to Take Plaintiffs' Property in Excess of Demonstrated Need Pursuant to "Blanket Certificates" Violates Plaintiffs' Procedural-Due-Process Rights Under the Fifth Amendment.**

100.    Plaintiffs incorporate the allegations in paragraphs 1 through 76.

101.    Plaintiffs seek a declaratory judgment that FERC's practice of delegating eminent domain authority to take Plaintiffs' property in excess of demonstrated need pursuant to "blanket certificates" violates the procedural-due-process rights of Plaintiffs and other interested parties under the Due Process Clause of the Fifth Amendment.

**COUNT 13:   Declaratory Judgment That FERC's Policy of Allowing The Number of Negotiated Easements to Substitute for a Certificate Applicant's Demonstration of Public Necessity Violates the Natural Gas Act.**

102.    Plaintiffs incorporate the allegations in paragraphs 1 through 101.

103.    Under the balancing test in FERC's Certificate Policy Statement, an applicant for a CCN that can demonstrate that it has negotiated easement rights for its pipeline with impacted landowners is not required to show need, or may make a less compelling showing of need than constitutionally required.

104.    FERC's policy creates a perverse incentive for companies to use any means necessary (including representations that they have eminent domain rights under the Natural Gas Act) to secure negotiated easement agreements with landowners to reduce or eliminate the requirement to show project need.

27

105.   FERC's policy also encourages pipelines to lock down their preferred routes, resulting in an irretrievable commitment of resources to a project that does not serve the public convenience.

106.   Plaintiffs seek a declaration that FERC's policy of relying on the number of negotiated agreements and the concomitant "irretrievable commitment of resources" to substitute for a certificate applicant's demonstration of public necessity violates the Natural Gas Act.

**COUNT 14: Declaratory Judgment That FERC's Refusal to Afford Impacted Landowners Access to Confidential and Privileged Filings by the Applicant To Allow Them To Challenge Public Need Violates Landowners' Due Process Rights.**

107.   Plaintiffs incorporate the allegations in paragraphs 1-106.

108.   CCN applicants routinely file confidential and privileged information in support of their application that is also relevant to the project's public use and necessity.  Without this information, landowners are unable to effectively challenge the public use or need for the project.

109.   Plaintiffs have requested from FERC the confidential and privileged materials filed by MVP and ACP, but these documents have not been disclosed.

110.   Plaintiffs seek a declaration that FERC's reliance on confidential and privileged information withheld from impacted landowners violates their due process rights by depriving them of a meaningful opportunity to challenge project use and need.

**COUNT 15: Declaratory Judgment That FERC's Failure to Condition Conferral of Eminent Domain Authority Only to Entities That Have Demonstrated Assets Sufficient to Guarantee Payment of Just Compensation Violates the Fifth Amendment's Takings Clause.**

111.   Plaintiffs incorporate the allegations in paragraphs 1 through 110.

112.   Plaintiffs seek a declaratory judgment that FERC's has failed to condition conferral of eminent domain power only to entities with demonstrated assets sufficient to pay Plaintiffs and other affected landowners the "just compensation" required by the Fifth Amendment—and that the failure to require such a condition violates the Takings Clause of the Fifth Amendment.

**COUNT 16   Declaratory Judgment That FERC's Failure to Condition Conferral of Eminent Domain Authority Only to Entities That Have Demonstrated Assets Sufficient to Guarantee Payment of Just Compensation Violates Constitutional Separation-of-Powers Principles, Including the Private Nondelegation Doctrine.**

113.   Plaintiffs incorporate the allegations in paragraphs 1 through 112.

114.   Plaintiffs seek a declaratory judgment that FERC's has failed to condition conferral of eminent domain power only to entities with demonstrated assets sufficient to pay Plaintiffs and other affected landowners the "just compensation" required by the Fifth Amendment—and that the failure to require such a condition violates constitutional separation-of-powers principles, including the private nondelegation doctrine.

**COUNT 17   Declaratory Judgment That FERC's Failure to Preclude "Quick-Take" Condemnations and the Possession of Taken Property Is a Violation of the Fifth Amendment's Due Process Clause.**

115.   Plaintiffs incorporate the allegations in paragraphs 1 through 114.

116.  The Natural Gas Act does not contain any provisions allowing for the "quick take" of private property, nor has Congress specifically delegating quick-take power to FERC or private entities under the Act.

117.  Plaintiffs seek a declaratory judgment that FERC's failure to preclude "quick-take" condemnations and the possession of taken property is a violation of the Fifth Amendment's Due Process Clause.

**COUNT 18**  **Declaratory Judgment That FERC's Failure to Preclude "Quick-Take" Condemnations and the Possession of Taken Property Is a Violation of the Fifth Amendment's Due Process Clause.**

118.  Plaintiffs incorporate the allegations in paragraphs 1 through 117.

119.  Plaintiffs seek a declaratory judgment that FERC's failure to preclude "quick-take" condemnations and the possession of taken property is a violation of the Fifth Amendment's Takings Clause.

**COUNT 19**  **Declaratory Judgment That FERC's Failure to Preclude "Quick-Take" Condemnations and the Possession of Taken Property Is a Violation of Constitutional Separation-of-Powers Principles, Including the Private Nondelegation Doctrine.**

120.  Plaintiffs incorporate the allegations in paragraphs 1 through 119.

121.  Plaintiffs seek a declaratory judgment that FERC's failure to preclude "quick-take" condemnations and the possession of taken property is a violation of constitutional separation-of-powers principles, including the private nondelegation doctrine.

**PRAYER FOR RELIEF**

122.    Plaintiffs incorporate the allegations in paragraphs 1 through 121 and respectfully pray for the following relief:

A.    the declaratory relief requested above;

B.    an injunction preventing FERC from issuing a certificate of convenience and necessity to MVP and/or ACP until this proceeding is resolved;

C.    in the alternative, an injunction preventing FERC from conferring eminent domain authority to MVP and/or ACP if it grants MVP and/or ACP a certificate of convenience and necessity conditioned on the receipt of federal or state authorizations;

D.    in the alternative, an injunction preventing FERC from issuing ACP or MVP a blanket certificate in excess of demonstrated need;

E.    in the alternative, an injunction preventing FERC from issuing certificates to ACP or MVP allowing quick-take condemnations;

F.    in the alternative, an order granting Plaintiffs discovery on MVP's and ACP's plans to transport gas for export and other issues relevant to Plaintiffs' claims;

G.    attorneys' fees, other costs and such other relief as the Court deems appropriate and just.

Respectfully submitted,

*/s/ Carolyn Elefant*
_____
Carolyn Elefant D.C. Bar #265433
Law Offices of Carolyn Elefant PLLC
2200 Pennsylvania Avenue, 4th Flr. E
Washington D.C. 20037
202-297-6100
carolyn@carolynelefant.com
September 5, 2017

31

**ATTACHMENT A**

| Landowner Name(s) | Your property is in route of which proposed pipeline? | Affected Property Address | Area of Land Impacted And/Or Subject to Taking |
|---|---|---|---|
| Carolyn Maki, William Maki, EJ Maki | ACP | 2228 Rockfish Valley Highway | 5 acres |
| James and Katherine McLean | ACP | 696 Vance Lane Warm Springs, VA | 2 acres |
| Louis & Yvette Ravina | ACP | 3383 Churchville Ave Staunton  VA  24401 Permanent ROW: 6.02A Temp ROW: 3.92A Extra Work Space:  0.63 Agricultural Lands Area: 1.39A Water Impoundment Area: 2.07A Total: 14.03 Acres | 3528 Linear Ft |
| Richard (Dick) Averitt III | ACP | On route 151 across from Bold Rock | 100 acres |
| William S. Moore and Carol M. Moore trustees of the Moore Revocable Trust | ACP | 2594 Bryant Mountain Road, Roseland, VA 22967 | 39 acres to include a stone mountain home and three additional building sites with 50 mile views |
| William S. Moore and Carol M. Moore trustees of the Moore Revocable Trust | ACP | 2594 Bryant Mountain Road, Roseland, VA  22967 | 39 acres |
| Hershel and Darlene Spears | ACP | 2215 Spruce Creek Lane, Nellysford, VA  22958 | 5 acres |
| Jonathan Ansell and Pamela Farnham | ACP | 159 Fortune's Point Lane, Roseland VA 22967 | 1.8 acres for permanent easement; additional 2 -4 for temporary workspace. |
| Lora & Victor Baum | ACP | 368 Fern Gully Lane Warm Springs, VA 24484 | ? about an acre? It runs across the entire length of our 31 acre property |
| Demian K. Jackson; Bridget K. Hamre (as members of Nelson County Creekside, LLC ) | ACP | 106 Starvale Lane., Shipman, VA 22971 | 6 AC in permanent right away (bisecting 105 AC with entire property in blast zone) |
| Horizons Village Property Owners Association | ACP | Common land and roads within Horizons Village Subdivision in Nelson County.  No street address.  Our mailing address is P.O. Box 122 Nellysford VA 22958 | ~2 acres plus use of private roads |

| Anne and Ken Norwood | ACP | 3509 Stagebridge Rd Lovingston VA 22949 | 1/4 mile |
|---|---|---|---|
| carolyn fischer | ACP | 184 mountain field trail Nellysford, Va | 1/4 acre |
| Pearl L. Finch | ACP | near intersection of NC HWY 581 and Renfrow Road, Wilson County, NC | 1 acre+ or - |
| Heather Louise Finch | ACP | near intersection of NC HWY 581 and Renfrow Road, Wilson County, NC | 1-2 acres +/- |
| Wade Raymond Finch | ACP | near intersection of NC HWY 581 and Renfrow Road, Wilson County, NC | 1-2 acres (+ or - ) |
| Randy and Kathleen Forbes | ACP | TBD Deerfield Rd   Millboro, VA | 5 acres |
| Todd Rath | ACP | 462 Winery Lane Roseland VA 22967 | 2 acres |
| W. Marvin Winstead, Jr. | ACP | 540 Sandy Cross Rd. , Nashville, NC 27856 | 70 acres |
| Friends of Nelson on behalf of Nelson County Landowners and Membership | ACP | numerous in Nelson County | numerous in Nelson County |
| Susan Lazerson & Clifford Savell | ACP | 14 Crystal Lane,  Faber,  VA 22938 | 100 yards of access road |
| Bill and Lynn Limpert | ACP | 250 Fern Gully Lane Warm Springs, VA 24484 | About 10 acres |
| Wade A. & Elizabeth G. Neely | ACP | 10190 Deerfield Road, Millboro, Virginia 24460 | Parcel affected has 127 acres in it. |
| Nancy L Avery | ACP | My address: 195 Flying Eagle Ct. Nellysford, VA. Affected property is: Nelson County Tax Map 21 13 14A - a vacant lot I own. | One tenth of an acre. |

| Name | Pipeline | Address | Impact |
|---|---|---|---|
| Nancy & Shahir Kassam-Adams | ACP | 360 Laurel Lane,  Lovingston VA 22949 | 4.6 linear acres (according to ACP) with major impact on 2 parcels totaling 55 acres |
| Robert turner stephanie barton | ACP | 6237 laurel Rd, Faber, VA 22971  (rt 639 tax map 59 a 29 30 31) | Six acres. |
| James A. Hardee | ACP | Heathsville Rd. Enfield N.C. 27823 | 7.5 acres |
| James A.Hardee | ACP | 8431 Heathsville Rd., Enfield, N.C. 27823 | 8.5 acres |
| Hazel Rhames (trustee - Joe Rhames) | ACP | Gullysville Lane | 9 acres of a 125 acre parcel |
| Joe Poland | ACP | 5740 Old Bailey Hwy, Nashville NC  27856 | 40 acres |
| Dawn Averitt | ACP | 330 Grace Glen, Nellysford, VA 22958 | 73 acres |
| Mary Ellen Rives | MVP | 10239 Bottom Creek Road, Bent Mountain, VA. 24059 | 10 acres |
| Anne Way and Stephen Bernard | MVP | 7879 Grassy Hill Rd    Boones Mill  VA  24065 | technically, about an acre |
| Georgia Haverty; Doe Creek Farm | MVP | 412 Doe Creek Farm Road | 4 acres (direct) 400 acres (indirect) |
| Brenda Lynn Williams | MVP | 261 Winding Way Drive, Newport, VA  24128 | 69.5 acres owned by 7 generations |
| Serina Garst, President of Occanneechi, Inc. | MVP | 1600 Cahas Mountain Road (farm land - no actual street address) | I would estimate that approximately 100 acres or more would be impacted by the pipeline.  MVP is seeking easements for 11.5 acres for the Right of Way and 17.2 for temporary easements. |
| Jerry & Jerolyn Deplazes | MVP | 291 Seven Oaks Road, Newport VA 24128-3558 | 2.8 acres permanent ROW/4.2 acres temporary ROW |
| Newport Development Company, LLC | MVP | Winding Way Road, Newport VA 24128 | 2.95 acres permanent ROW; 4.43 acres temporary ROW |

| | | | |
|---|---|---|---|
| Clifford A. Shaffer | MVP | 249 Brookside Lane, Newport VA 24128 | 1200 linear feet |
| Tamara Hodsden | MVP | 237 Clover Hollow Rd. Newport, Va. 24128 | 2 acres |
| Frank S and Katherine A Quinn | MVP | 215 Zells Mill Rd., Newport, Va. 24128 | two acres |
| Charles F Flora & Stephanie M Flora | MVP | 1906 Arden Rd SW Roanoke VA 24015 | 5 acres |
| Charles F Flora & Stephanie M Flora | MVP | Cahas Mountain Road; Tax Map Id - 038 00-020 02 | 5 acres |
| Benny L. Huffman | MVP | 606 Blue Grass Trail, Newport VA 24128-3556, Tract # VA-GI-5779 | Access Road right of way |
| Ian Elliott Reilly & Carolyn Elizabeth Reilly and Dave J. Werner & Betty B. Werner | MVP | 404 Old Mill Creek Lane, Rocky Mount, VA 24151 | 4 acres directly impacted, but would lose access to bottom land pasture; approximately 17 acres |
| Mary E. and Bruce M. Coffey | MVP | 10303 Russwood Road,   Bent Mountain Virginia | 3.5 acres |
| Jacqueline J. Lucki | MVP | 10289 Russwood Road, Bent Mountain Virginia 24059 | 17 acres |
| David G. and Karen M. Yolton | MVP | 8165 Virginia Ave., Newport, VA 24128 | twenty acres |
| Clarence B. Givens and Karolyn W. Givens | MVP | 199 Leffel Lane, Newport Virginia 24128 | | 3 |
| Walter and jane embrey | MVP | 495 Signal Hill Drive, Callaway, Va 24067 | 100 sq ft |
| Guy W, and Margaret S. Buford | MVP | 985 Iron Ridge Rd. Rocky Mount, VA 24151 | 5-6 acres |
| Rebecca J Dameron | MVP | 10721 Bent Mountain Road Bent Mountain, VA  24059 | 1/2 acre |
| Keith wilson | MVP | 887 Labellevue drive, boones Mill, va. 24065 | 16 acres (approx 1 acre on proposed route) |
| Frank and Jacqueline Biscardi | MVP | 128 Labellevue Drive | 1-5 acres |

| Wendell & Mary Flora | MVP | 150 Floradale Farms Lane, Boones Mill, VA 24065 | 55 acres total farm land |
| Reinhard & Ashofteh Bouman | MVP | 282, Ashwood Dr.,  Meadow Bridge, WV 25976 | Length of possible access road is approximately 1,100 ft |
| James Gore | MVP | 6355 Blue Lick Road, Greenville, WV 24945 | 228 acres |