# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BOLD ALLIANCE**
208 S. Burlington Ave., Ste 103, Box 325
Hastings, NE 68901

**BOLD EDUCATIONAL FUND**
208 S. Burlington Ave., Ste 103, Box 325
Hastings, NE 68901

**FRIENDS OF NELSON COUNTY**
P.O. Box 33
Nellysford, VA  22958

**CAROLYN MAKI, WILLIAM MAKI, EJ MAKI**
2228 Rockfish Valley Highway

**JAMES AND KATHERINE MCLEAN**
696 Vance Lane
Warm Springs, VA

**LOUIS & YVETTE RAVINA**
3383 Churchville Ave
Staunton, VA  24401

**RICHARD (DICK) AVERITT III**
On route 151 across from Bold Rock

**WILLIAM S. MOORE AND CAROL M. MOORE
TRUSTEES OF THE MOORE REVOCABLE
TRUST**
2594 Bryant Mountain Road,
Roseland, VA  22967

**HERSHEL AND DARLENE SPEARS**
2215 Spruce Creek Lane,
Nellysford, VA  22958

**JONATHAN ANSELL AND PAMELA
FARNHAM**
159 Fortune's Point Lane,
Roseland, VA 22967

:
:
:
:
:
:
:
:
:
:
:
:
:
:   Case No. 17-1822
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**LORA & VICTOR BAUM**                                  :
368 Fern Gully Lane                                     :
Warm Springs, VA 24484                                  :
                                                        :
**DEMIAN K. JACKSON; BRIDGET K. HAMRE**                 :
**(AS MEMBERS OF NELSON COUNTY**                        :
**CREEKSIDE, LLC )**                                    :
106 Starvale Lane.,                                     :
Shipman, VA 22971                                       :
                                                        :
**HORIZONS VILLAGE PROPERTY OWNERS**                    :
**ASSOCIATION**                                         :
P.O. Box 122                                            :
Nellysford, VA 22958                                    :
Common land and roads within Horizons Village          :
Subdivision in Nelson County.                           :
No street address.                                      :
                                                        :
**ANNE AND KEN NORWOOD**                                :
3509 Stagebridge Rd                                     :
Lovingston, VA 22949                                    :
                                                        :
**CAROLYN FISCHER**                                     :
184 Mountain Field Trail                                :
Nellysford, VA                                          :
                                                        :
**PEARL L. FINCH**                                      :
Near intersection of NC HWY 581 and Renfrow             :
Road,                                                   :
Wilson County, NC                                       :
                                                        :
**HEATHER LOUISE FINCH**                                :
Near intersection of NC HWY 581 and Renfrow             :
Road,                                                   :
Wilson County, NC                                       :
                                                        :
**WADE RAYMOND FINCH**                                  :
near intersection of NC HWY 581 and Renfrow Road,       :
Wilson County, NC                                       :
                                                        :
**RANDY AND KATHLEEN FORBES**                           :
TBD Deerfield Rd                                        :
Millboro, VA                                            :
                                                        :
                                                        :
                                                        :

**TODD RATH**                                              :
462 Winery Lane                                           :
Roseland, VA 22967                                        :
                                                          :
**W. MARVIN WINSTEAD, JR.**                               :
540 Sandy Cross Rd. ,                                     :
Nashville, NC 27856                                       :
                                                          :
**SUSAN LAZERSON & CLIFFORD SAVELL**                      :
14 Crystal Lane,                                          :
Faber,  VA 22938                                          :
                                                          :
**BILL AND LYNN LIMPERT**                                 :
250 Fern Gully Lane                                       :
Warm Springs, VA 24484                                    :
                                                          :
**WADE A. & ELIZABETH G. NEELY**                          :
10190 Deerfield Road,                                     :
Millboro, Virginia 24460                                  :
                                                          :
**NANCY L AVERY**                                         :
195 Flying Eagle Ct.                                      :
Nellysford, VA.                                           :
Nelson County Tax Map 21 13 14A                           :
                                                          :
**NANCY & SHAHIR KASSAM-ADAMS**                           :
360 Laurel Lane,                                          :
Lovingston VA 22949                                       :
                                                          :
**ROBERT TURNER AND STEPHANIE BARTON**                    :
6237 Laurel Rd,                                           :
Faber, VA  22971                                          :
Rt 639 Tax Map 59 A 29 30 31                              :
                                                          :
**JAMES A. HARDEE**                                       :
8431 Heathsville Rd.,                                     :
Enfield, N.C. 27823                                       :
                                                          :
**HAZEL RHAMES (TRUSTEE - JOE RHAMES)**                   :
Gullysville Lane                                          :
                                                          :
**JOE POLAND**                                            :
5740 Old Bailey Hwy,                                      :
Nashville NC  27856                                       :
                                                          :

**DAWN AVERITT**                                    :
330 Grace Glen,                                    :
Nellysford, VA 22958                               :
                                                   :
**MARY ELLEN RIVES**                               :
10239 Bottom Creek Road,                           :
Bent Mountain, VA. 24059                           :
                                                   :
**ANNE WAY AND STEPHEN BERNARD**                   :
7879 Grassy Hill Rd                                :
Boones Mill  VA   24065                            :
                                                   :
**GEORGIA HAVERTY; DOE CREEK FARM**                :
412 Doe Creek Farm Road                            :
                                                   :
**BRENDA LYNN WILLIAMS**                           :
261 Winding Way Drive,                             :
Newport, VA  24128                                 :
                                                   :
**SERINA GARST, PRESIDENT OF**                     :
**OCCANNEECHI, INC.**                              :
1600 Cahas Mountain Road (farm land - no actual    :
street address)                                    :
                                                   :
**JERRY & JEROLYN DEPLAZES**                       :
291 Seven Oaks Road,                               :
Newport VA 24128-3558                              :
                                                   :
**NEWPORT DEVELOPMENT COMPANY, LLC**               :
Winding Way Road,                                  :
Newport, VA 24128                                  :
                                                   :
**CLIFFORD A. SHAFFER**                            :
249 Brookside Lane,                                :
Newport, VA 24128                                  :
                                                   :
**TAMARA HODSDEN**                                 :
237 Clover Hollow Rd.                              :
Newport, VA 24128                                  :
                                                   :
**FRANK S AND KATHERINE A QUINN**                  :
215 Zells Mill Rd.,                                :
Newport, VA 24128                                  :
                                                   :
                                                   :
                                                   :

**CHARLES F FLORA & STEPHANIE M FLORA**     :
1906 Arden Rd SW                            :
Roanoke, VA 24015                           :
                                            :
**CHARLES F FLORA & STEPHANIE M FLORA**     :
Cahas Mountain Road;                        :
Tax Map Id - 038 00-020 02                  :
                                            :
**BENNY L. HUFFMAN**                        :
606 Blue Grass Trail,                       :
Newport, VA 24128-3556,                     :
Tract # VA-GI-5779                          :
                                            :
**IAN ELLIOTT REILLY & CAROLYN**            :
**ELIZABETH REILLY**                        :
**AND DAVE J. WERNER & BETTY B. WERNER**    :
404 Old Mill Creek Lane,                    :
Rocky Mount, VA 24151                       :
                                            :
**MARY E. AND BRUCE M. COFFEY**             :
10303 Russwood Road,                        :
Bent Mountain, VA                           :
                                            :
**JACQUELINE J. LUCKI**                     :
10289 Russwood Road,                        :
Bent Mountain, VA 24059                     :
                                            :
**DAVID G. AND KAREN M. YOLTON**            :
8165 Virginia Ave.,                         :
Newport, VA 24128                           :
                                            :
**CLARENCE B. GIVENS AND KAROLYN W.**       :
**GIVENS**                                  :
199 Leffel Lane,                            :
Newport, VA 24128                           :
                                            :
**WALTER AND JANE EMBREY**                  :
495 Signal Hill Drive,                      :
Callaway, VA 24067                          :
                                            :
**GUY W, AND MARGARET S. BUFORD**           :
985 Iron Ridge Rd.                          :
Rocky Mount, VA 24151                       :
                                            :
                                            :
                                            :

**REBECCA J DAMERON**                                    :
10721 Bent Mountain Road                                 :
Bent Mountain, VA  24059                                 :
                                                         :
**KEITH WILSON**                                         :
887 Labellevue Dr.,                                      :
Boones Mill, VA 24065                                    :
                                                         :
**FRANK AND JACQUELINE BISCARDI**                        :
128 Labellevue Drive                                     :
                                                         :
**WENDELL & MARY FLORA**                                 :
150 Floradale Farms Lane,                                :
Boones Mill, VA 24065                                    :
                                                         :
**REINHARD & ASHOFTEH BOUMAN**                           :
282, Ashwood Dr.,                                        :
Meadow Bridge, WV 25976                                  :
                                                         :
**JAMES GORE**                                           :
6355 Blue Lick Road,                                     :
Greenville, WV 24945                                     :
                                                         :
**MIKE CRAIG**                                           :
5464 Wheelers Cove Rd.                                   :
Shipman, VA 22971                                        :
                                                         :
**GERALD & ELIZABETH WOZNIAK**                           :
22344 Governor Harrison Pkwy.,                           :
Freeman, VA 23856                                        :
                                                         :
**CHRIS & EMILY PROSISE**                                :
4054 White Oak Road**,**                                 :
Blackstone, VA 23824                                     :
                                                         :
**JUDY ALLEN**                                           :
10027 Dry Run Road,                                      :
Burnsville, VA 24487                                     :
                                                         :
**KEITH & MERRIFIELD EHRHARD**                           :
Lot 44, Treehouse Place, Horizon Village,                :
Nellysford, VA 22958                                     :
                                                         :
                                                         :
                                                         :
                                                         :

**IRENE S ELLIS, TRUSTEE, RANDOLPH H.**          :
**LEECH, IRENE E. LEECH, MARGARET ANNE**         :
**MARTIN, TIMOTHY MARTIN**                        :
9161 West James Anderson Hwy.,                   :
Buckingham, VA 23921                             :
                                                 :
**JOHN C GEARY**                                  :
714 Hotchkiss Rd.,                               :
Churchville, VA 24421                            :
                                                 :
**GEORGE SPROUL**                                 :
744 West Augusta Rd,                             :
West Augusta, VA 24485

                    **v.**

**FEDERAL ENERGY REGULATORY**
**COMMISSION**
888 First Street, N.E.
Washington D.C. 20426

and

**CHAIRMAN NEIL CHATTERJEE,**
**COMMISSIONER CHERYL LAFLEUR,**
**COMMISSIONER ROBERT POWELSON** in their
official capacities
as Commissioners of the Federal Energy
Regulatory Commission
888 First Street, N.E.
Washington D.C. 20426

**MOUNTAIN VALLEY PIPELINE**
Serve Registered Agent:
CT Corporation System
4701 Cox Road Ste. 285
Glen Allen, VA 23060

**ATLANTIC COAST PIPELINE LLC**
CT Corporation System
4701 Cox Road Ste. 285
Glen Allen, VA 23060

DEFENDANTS

**BOLD ALLIANCE ET. AL. FIRST AMENDED COMPLAINT
FOR DECLARATORY RELIEF**

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND**

**INJUNCTIVE RELIEF**

Plaintiffs Bold Alliance, Bold Educational Fund, Friends of Nelson, and the named individual landowners file this First Amended Complaint against Defendants Federal Energy Regulatory Commission (FERC); FERC Chairman Neil Chatterjee and FERC Commissioners Cheryl LaFleur and Robert Powelson in their official capacities; Mountain Valley Pipeline, LLC; and Atlantic Coast Pipeline LLC. Plaintiffs allege and pray as follows:

**INTRODUCTION**

1.     In the 80 years since the Natural Gas Act was enacted, the natural-gas industry has changed dramatically. With the deregulation of natural-gas markets beginning in the 1980s, the industry has transformed, evolving from a heavily regulated enterprise subject to strict oversight by regulators to a free market dominated by unregulated players in search of lucrative opportunities, including spot-market sales, participation in gas-commodities markets, and export. Yet even as the role of interstate pipelines and the nature of the natural-gas industry have changed, the eminent-domain provisions of the Natural Gas Act have not. In light of changes in the gas industry and the evolution of FERC policies and practices related to regulation of pipelines, FERC's Certificate Program and its application to the eminent-domain provisions of the Natural Gas

Act no longer further a truly public use and instead unlawfully opens the gate to allow private gas companies to exercise condemnation powers far in excess of what Congress ever intended or what the Fifth Amendment allows.. This statutory and constitutional challenge is long overdue.

2.     This lawsuit challenges the process by which FERC confers eminent-domain powers on private, for-profit natural-gas pipeline companies. Under section 7f(h) of the Natural Gas Act (15 U.S.C. §§717 *et seq*.), any company that obtains a "certificate of convenience and necessity" ("CCN") from FERC has the power to condemn. The only way this arrangement can satisfy statutory requirements and the Constitution is if FERC provides procedural due process to condemnees and grants certificates only those projects that serve a "public use."

3.     FERC's certificate program and its gatekeeping role in safeguarding the use of eminent domain under the NGA fall short in numerous ways. By way of example:

- FERC does not require pipeline companies to demonstrate their projects serve a public use.

- FERC does not inform potentially impacted landowners whose property will be taken by a pipeline through eminent domain that they must intervene to avoid waiving the right to challenge FERC's grant of a certificate.

2

- FERC grants not only CCNs but also "conditioned certificates" and "blanket certificates," which are not statutorily authorized and which give pipeline companies eminent-domain powers far beyond statutory and constitutional limits.

- FERC withholds information from landowners that they could use to refute project need.

- FERC does not require companies to post bonds or otherwise demonstrate sufficient assets before commencing projects, thus creating a risk that those private, for-profit companies will not actually and ultimately pay constitutionally mandated just compensation for the property they take.

4.     Collectively, these shortcomings—and others—entail that FERC's certificate program violates the NGA itself as well as constitutional provisions including the Due Process and Takings Clauses of the Fifth Amendment (among others), resulting in a delegation of extraordinary eminent-domain powers to private companies far beyond what Congress ever intended and an assault on landowners' property rights.

5.     These shortcomings impact the landowner Plaintiffs in this case personally. Now that FERC has issued Certificates of Necessity and Convenience to MVP and ACP, the individual Plaintiffs along with members of Plaintiff BOLD Alliance face actual or imminent condemnation

3

proceedings for two pipeline projects—the proposed Atlantic Coast Pipeline ("ACP") and Mountain Valley Pipeline ("MVP"). Indeed, just last week, MVP filed condemnation complaints in federal district court for the Western District of Virginia (Docket No. 2:17-cv-04214) and the Southern District of West Virginia (Docket No. 7:17cv-492) against approximately hundreds of landowners in West Virginia and Virginia.

6.    This lawsuit seeks a declaration that FERC's certificate program, as implemented, violates the Natural Gas Act and the U.S. Constitution. As relief, Plaintiffs ask the Court to declare the MVP and ACP certificates unlawful under the NGA and the United States Constitution and to enjoin MVP and ACP from proceeding with eminent-domain actions under the unlawful FERC certificates. Further, the Court should prohibit FERC from awarding any pipeline certificates under its flawed program until the Commission corrects the statutory and constitutional deficiencies in the certificate process. Unless the Court grants this relief, Plaintiffs and others similarly situated will have their statutory protections and constitutional rights violated.

## JURISDICTION AND VENUE

7.    This action arises under the Due Process and Takings Clauses of the Fifth Amendment as well as separation-of-powers provisions of the United States Constitution. It also arises under the Natural Gas Act, 15

4

U.S.C. §717f(h). Accordingly, the Court has jurisdiction under 28 U.S.C. §1331. The Court also has jurisdiction under 15 U.S.C. §717u, which establishes exclusive jurisdiction in federal district courts for violations of the Natural Gas Act and rules and regulations arising thereunder.

8.     Plaintiffs seek a declaratory judgment under the federal Declaratory Judgments Act, 28 U.S.C. §2201-2202, and appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9.     Venue is proper in the federal district court for the District of Columbia pursuant to 28 U.S.C. §1391(e)(1)(A) and 15 U.S.C. §717u. Defendant FERC is an agency of the United States and resides in this judicial district, while Mountain Valley LLC and Atlantic Coast Pipeline LLC have submitted to the processing of its certificate application in the District of Columbia.

10.     The individually named landowners have standing to bring this action because they own realty in the path of the MVP and ACP Projects. Now that FERC has granted the certificates to MVP and ACP, the individual landowner Plaintiffs' realty will be subject to eminent domain. The landowner Plaintiffs who reside along the MVP line have been named as defendants in condemnation lawsuits filed by MVP in federal district courts, while ACP's condemnation actions are imminent.

5

11.   Plaintiff Bold Appalachia has organizational standing because its members are directly impacted by the MVP and ACP projects and have individual standing to sue.

12.   This Court can and must act now to grant the declaratory and injunctive relief Plaintiffs seek because, without it, MVP and ACP rely on statutorily and constitutionally deficient certificates to proceed with condemnation lawsuits in federal courts with no opportunity for landowners to mount a challenge. Meanwhile, FERC will persist in awarding statutorily and constitutionally flawed certificates.

13.   This Court has jurisdiction to entertain the Plaintiffs' claims which specifically challenge the statutory and constitutional soundness of the MVP and ACP certificates and more broadly, the interpretation and as-applied constitutionality of the Natural Gas Act and systemic flaws in FERC's implementation thereof. FERC itself has already disclaimed jurisdiction over a determination of the constitutionality of the Natural Gas Act in the MVP and ACP Certificate Orders. Civil Action No. 16-cv-416 (March 2017) (addressing challenges to FERC's systemic bias in funding raised by intervenors in certificate proceeding at FERC).

14.   Further, Plaintiffs need not seek rehearing and judicial review of the FERC certificates under section 717r(a) and (b) of the Natural Gas Act, 15 U.S.C. §717r, nor wait for MVP and ACP to actually take their

property in a condemnation proceeding in order to bring this suit. The Supreme Court of the United States allows "individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *See Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59 (1978) (allowing declaratory relief for potential taking). Further, at least nine of the Plaintiffs did not intervene in the FERC process and therefore are foreclosed from availing themselves of the procedural remedies set forth in section 717r. *See* 15 U.S.C. §717r(a) (providing that only parties may seek rehearing which is jurisdictional prerequisite to judicial review).

## PARTIES

### I.    Plaintiffs

15.    Plaintiff Bold Education Fund is a 501(c)(3) organization formed under Nebraska law to educate the public about eminent-domain issues and the protection of water and climate. The Bold Education Fund includes as members landowners in the Appalachia Region whose property will be subject to eminent domain by the MVP and ACP Projects, including some of the individually named landowners in this suit.

16.    The Bold Alliance, a 501(c)(4) organization formed under Nebraska Law, advocates on behalf of impacted landowners and the general public to stop the use of eminent domain for private gain.

17.     Plaintiff Friends of Nelson is a citizen-run, community-based membership organization dedicated to the protection of property rights, property values, rural heritage and the environment for all the citizens of Nelson County, Virginia. Some of its members are individual landowners named as Plaintiffs in this lawsuit.

18.     The individual landowners in this proceeding are: Carolyn Maki and William Maki; James and Katherine McLean; Louis & Yvette Ravina; Richard Averitt III; William S. Moore and Carol M. Moore (Trustees of the Moore Revocable Trust); Hershel and Darlene Spears; Jonathan Ansell and Pamela Farnham; Lora and Victor Baum; Demian K. Jackson and Bridget K. Hamre (members of Nelson County Creekside, LLC); Horizons Village Property Owners Association; Anne and Ken Norwood; Carolyn Fischer; Pearl L. Finch; Heather Louise Finch; Wade Raymond Finch; Randy and Kathleen Forbes; Todd Rath; W. Marvin Winstead Jr.; Susan Lazerson and Clifford Savell; Bill and Lynn Limpert; Wade A. and Elizabeth G. Neely; Nancy L. Avery; Nancy & Shahir Kassam-Adams; Robert Turner; Stephanie Barton, James A. Hardee; Hazel Rhames (Trustee- Joe Rhames); Joe Poland; Dawn Averitt; Mary Ellen Rives; Anne Way and Stephen Bernard; Georgia Haverty - Doe Creek Farm; Brenda Lynn Williams; Serena Garst, President of Occanneechi, Inc; Jerry & Jerolyn Deplazes; Newport Development, LLC; Clifford A. Shaffer; Tamara Hodsden; Frank S. and Katherine A. Quinn; Charles

F. Flora and Stephanie Flora; Benny L. Huffman; Ian Elliott Reilly and Carolyn Elizabeth Reilly and Dave J. Werner and Betty B. Werner; Mary E. and Bruce M. Coffey; Jacqueline J. Lucki; David G. and Karen M. Yolton; Clarence B. Givens and Karolyn W. Givens; Walter and Jane Embrey; Guy W. and Margaret S. Buford; Rebecca Dameron; Keith Wilson; Frank and Jacqueline Biscardi; Wendell & Mary Flora; Reinhard and Ashofteh Bouman; James Gore; Mike Craig; Gerald and Elizabeth Wozniak; Chris and Emily Prosise; Judy Allen; Keith and Merrifield Ehrhard; Irene S. Ellis, Trustee, Randolph H. Leech, Irene E. Leech, Margaret Anne Martin, Timothy Martin; John C. Geary and George Sproul.[1]

19.    All of these individual landowners own property that will be crossed by the MVP Project or ACP Project and that will be taken by eminent domain under 15 U.S.C. §717f(h).  The individual landowners who live along the MVP Pipeline and are plaintiffs in this action have already been named as defendants in MVP's condemnation actions.

---

[1] Attachment 1 to this Complaint lists each landowner's address, the pipeline that will cross their respective property and amount of property that will be impacted by condemnation.

9

20.     While the majority of the landowners who are plaintiffs intervened in the FERC proceeding, at least nine of the landowners have not.[2]

21.     The MVP and ACP will directly and adversely impact Plaintiffs. Not only will both projects result in an unconstitutional taking of Plaintiffs' property but the projects will cause direct harm.  The projects will forever encumber Plaintiffs' properties even if the pipelines are later abandoned, diminish development potential and property value, raze trees and destroy farms and generally pose risks to the health and safety of the Plaintiffs and the surrounding environment.

## II.     Defendant Federal Energy Regulatory Commission

22.     Defendant Federal Energy Regulatory Commission is an independent agency formed under 42 U.S.C. §7171(a). As of the date of this Complaint, the Commission consists of Acting Chairman Neil Chatterjee and Commissioners Cheryl LaFleur and Robert Powelson.

23.     The Commission claims authority under the Natural Gas Act to issue CCNs to companies that propose to construct, operate, and maintain interstate natural-gas pipelines.

## III.    Defendant Mountain Valley Pipeline LLC

---

[2]The landowner plaintiffs who did not intervene in the FERC process are Jacki Lucki, Lyn Limpert, Scott Ballin, Carolyn Maki, Lora Baum, Guy Buford, David Yolton, Ann and Stephen Bernard, Jacqueline Biscardi and George Sproul.

24.     Defendant Mountain Valley Pipeline LLC is a private, for-profit limited liability company organized and existing under the laws of Delaware. Mountain Valley is a joint venture between EQT Midstream Partners, LP; NextEra Energy US Gas Assets, LLC; WGL Midstream, Inc.; Vega Midstream MVP LLC; RGC Midstream, LLC; and Con Edison Gas Midstream. Mountain Valley was formed solely to develop the MVP.

## IV.   Defendant Atlantic Coast Pipeline LLC

25.     Defendant Atlantic Coast Pipeline LLC (Atlantic Coast) is a private, for-profit limited liability company organized under the laws of Delaware with its principal place of business in Richmond, Virginia. Atlantic Coast is a joint venture of Dominion Resources (which has a 45% interest in the venture), Duke Energy (40%), Piedmont Natural Gas Company (10%) and AGL Resources (5%). Atlantic Coast was formed to develop the ACP.

## FACTUAL BACKGROUND

## I.     FERC's Regulatory Policies

### A.     Overview

26.     FERC oversees natural-gas companies, which the Natural Gas Act defines as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. §717(c). FERC's responsibilities include rate-setting,

11

oversight, and, critically, issuance of CCNs authorizing construction and operation of interstate gas pipelines. By statute, any entity that receives a CCN automatically has the power of eminent domain. 15 U.S.C. §717f(h). While the Natural Gas Act confers eminent-domain power on pipelines operating in interstate commerce, it does not confer eminent-domain power on pipelines operating in foreign commerce.

### B.    No Public-Use Determination

27.    Because the power of eminent domain attaches to every "holder of a certificate of convenience and necessity" under section 7f(h) of the Natural Gas Act, the constitutionality of the eminent-domain provisions hinges on whether a certificate issued by FERC serves a public use and a public necessity. By its own admission, however, FERC does not consider a determination of "public use" to be a necessary part of a grant of a certificate. *See Transcontinental Pipeline*, 158 FERC ¶ 61,125 (2017). Instead, FERC reasons that its determination of a public necessity is sufficient to allow certificate holders to exercise the power of eminent domain, as Congress has determined that applicants who satisfy FERC's public-necessity criteria will build or operate interstate pipelines that, under the NGA, comply with the Constitution's public-use requirement.

28.     In 1999, FERC adopted its Certificate Policy Statement,[3] which memorialized FERC's process for evaluating applications for CCNs. As the Certificate Policy Statement sets out, FERC first determines whether there is a need for the project, examining factors including market demand, the amount of pipeline capacity contractually committed, and lack of subsidization by existing ratepayers. FERC's review of need is superficial at best, as FERC does not "look behind precedent agreements" (*see e.g., Transcontinental Gas Pipe Line Co. LLC*, 157 FERC ¶ 61,095, at P. 5 (2016)), even though the Certificate Policy Statement suggests that affiliate contracts are less probative than those negotiated at arms' length.

29.     Finally, FERC balances the project's benefits against project impacts to the environment and landowners, using a sliding scale approach to determine whether to grant a certificate.

## C.     No Bond or Asset Requirement

30.     FERC does not require applicants to post bond or to demonstrate assets sufficient to ensure payment of just compensation to landowners. In fact, FERC has explicitly refused requests to condition issuance of a certificate on the project sponsor's posting bond or proving adequate assets. Accordingly, landowners receive no assurance that the

---

[3] *Certification of New Interstate Natural Gas Pipeline Facilities,* 88 FERC ¶ 61,227 (1999), clarified, 90 FERC ¶ 61,128, further clarified, 92 FERC ¶ 61,094 (2000) (Certificate Policy Statement).

private, for-profit entities condemning them will actually pay and ultimately be able to pay just compensation.

### D.  Extra-Statutory Certificate Programs

31.   FERC has also implemented "conditioned" and "blanket certificate" programs that are not expressly authorized by the Natural Gas Act.

#### 1.  Conditioned Certificates

32.   Conditioned certificates are nominally issued under section 7f(e) of the Natural Gas Act, which grants FERC the power to "attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." As a matter of practice, however, **FERC** routinely includes a standard condition in most certificates that states:

> Prior to receiving written authorization . . . to commence construction of any project facilities, [the applicant] shall file with the Secretary documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof.)

In other words, FERC routinely grants certificates for projects that are not yet legally authorized because they depend on the subsequent grant of additional permits by other federal and state agencies.

33.   Although FERC characterizes conditioned certificates as "incipient authorizations without force or effect," (*see e.g., Ruby Pipeline*

*LLC*, 133 FERC ¶61,015 (2010) at P. 18), FERC interprets those certificates as conferring the same power of eminent domain as non-conditioned certificates. FERC has, in fact, expressly refused to restrict eminent-domain powers under conditioned certificates even though they relate to projects that may never receive the proper approvals and therefore may never be constructed at all.

## 2.   Blanket Certificates

34.   Pipeline companies can also request "blanket certificate" authority. *See* 18 C.F.R. Part 157, Subpart F. As originally conceived by FERC, **the blanket certificate program was intended to enable a natural-gas company to undertake repairs and various** routine activities without the need to obtain a case-specific certificate for each individual project.

35.   In practice, however, companies have used blanket certificate authority for activities that fall well outside the definition of "routine" as that term is ordinarily understood—including construction of lateral lines, new compressor stations, and other facilities that may extend up to 15 miles from a certificated project, impact previously unaffected properties, impact properties owned by individuals who did not receive the opportunity for notice and hearing as required by the NGA, and serve entirely new purposes. When these activities occur under a blanket certificate, they may

15

proceed with minimal notice to landowners, with no opportunity for landowners to participate in a hearing or application process at FERC, and without any finding from FERC that the expansions will serve the public convenience.

### E.    Notice to Landowners

36.    After a pipeline files an application, FERC publishes notice of the application on its website and in the Federal Register. *See* Attachment 2 (FERC Notices for MVP and ACP). The FERC Notices describe the location and description of the proposed project and explain that "there are two ways to become involved in the Commission's review of the project": either by filing a motion to intervene (and becoming a party) or filing comments. The FERC notices, however, do not mention that the proposed pipeline, if approved, may potentially result in a taking of property by eminent domain. *See* Attachment 2.

37.    FERC's regulations also require pipeline applicants to notify potentially impacted landowners directly, either by mail or in person and by publication in local newspapers. 18 C.F.R. §157.6(d). The applicant's letter must identify the project and docket number, summarize a party's rights at the Commission and an eminent-domain proceeding, and include the most recent version of FERC's pamphlet entitled *An Interstate Gas Pipeline on My Property? What Landowners Need to Know. See* FERC webpage, *at*

16

https://ferc.gov/resources/guides/gas/gas.pdf.    Although materials that
project applicants are required to provide put landowners on notice of a
potential condemnation action, critically, they do not explain that a
landowner's failure to intervene in the FERC process will result in waiver of
potential statutory, constitutional, and other legal challenges to the
Certificate itself or to FERC's findings of public use and necessity. Thus,
there are serious due-process concerns with theory that 15 U.S.C. §717r is
the only vehicle for impacted landowners (including those who never
received notice that their property could be taken by eminent domain as a
result of the FERC process) to raise constitutional, statutory, and other
legal challenges to the FERC process.

## II.    The ACP

38.    The ACP Project consists of (1) approximately 564 miles of
42-inch-diameter pipeline in West Virginia, Virginia, and North Carolina;
(2) three new compressor stations providing approximately 125,000 nominal
horsepower (hp) of compression; and (3) other minor facilities. *See* ACP
Application at 14-15. The ACP Project will have numerous delivery and
receipt points to serve shippers. According to ACP's application, the pipeline
will carry up to 1.5 million dekatherms/day, bringing gas from the
Marcellus region of northern West Virginia Project to Virginia and North
Carolina.

39.     As the ACP pipeline makes its way through West Virginia, Virginia, and North Carolina, it will traverse mountainous topography and karst-ridden terrain, cut large swaths through hundreds of acres of forest (including the Monongahela National Forest (MNF) and George Washington National Forest (GWNF)), cross more than 1,500 water bodies, and adversely impact wildlife habitat and endangered species. In addition to its substantial and devastating environmental impacts, the ACP Project will jeopardize the safety, economic livelihood, and property values of landowners in its path.

40.     On September 18, 2015, ACP applied to FERC for a CCN and a blanket certificate. At the time of application, 96% of ACP's capacity was already subscribed. The contracts for this capacity are with utility companies that are subsidiaries of the ACP's joint venturers, as shown below:

Table 1. Utilities contracted to ship gas on the Atlantic Coast Pipeline. All but Public Service Company of North Carolina are subsidiaries of companies involved in developing the pipeline.

| Utility | Parent | Contracted capacity (dekatherms/day) |
|---|---|---|
| Virginia Power Services | Dominion | 300,000 |
| Duke Energy Progress | Duke | 452,750 |
| Duke Energy Carolinas | Duke | 272,250 |
| Piedmont | Piedmont Natural Gas | 160,000 |
| Public Service Company of North Carolina | SCANA Corporation | 100,000 |
| Virginia Natural Gas | AGL Resources | 155,000 |

41.     On October 2, 2015, FERC published the ACP Application.

18

42. In May 2017, the Landowners attempted, through the Freedom of Information Act (FOIA) and FERC's Critical Energy Infrastructure Information (CEII) rules, to obtain additional documents that would further corroborate the need for the project and intended use for gas exports. FERC failed to timely process their requests, which remain pending.

43. On October 13, 2017, FERC issued a Certificate for the ACP Project and approved ACP's request for a blanket certificate under Part 157 of FERC's regulations, with the FERC Chair and one Commissioner voting to approve the certificate and one Commissioner dissenting. *Atlantic Coast Pipeline*, 161 FERC ¶ 61,042 (2017). Condition 10 of the Certificate requires ACP to file documentation that it has received all applicable authorizations required under federal law (or evidence thereof) as a prerequisite to commencement of construction. As of the date of the Certificate, ACP had not received numerous federal authorizations including the section 401 water quality certificates from North Carolina and Virginia and U.S. Army Corps of Engineers' section 404 wetlands permit.

44. Also relevant here, the Commission determined that its "public convenience and necessity finding" is equivalent to a "public use" (ACP Certificate Order at 79) but added that the question of the constitutionality

of takings under the Certificate "is beyond our jurisdiction; only the courts can determine whether Congress' action in passing section 7(h) of the NGA conflicts with the Constitution." ACP Certificate Order at 81.

45.    With the FERC certificate issued, ACP can and will initiate-eminent-domain proceedings against landowners in state or federal district court under section 7f(h) of the Natural Gas Act, 15 U.S.C. §717f(h), seeking immediate possession of the property in advance of payment of compensation.

### III.   The MVP

46.    The MVP Project consists of (1) approximately 301 miles of 42-inch-diameter pipeline in West Virginia and Virginia; (2) three new compressor stations providing approximately 171,600 nominal horsepower (hp) of compression; and (3) other minor facilities. The MVP pipeline extends from an interconnection with Equitrans's existing pipeline in Wetzel County, West Virginia to a termination point at Transco's Zone 5 Compressor Station 165 (which is also a gas-trading hub for the mid-Atlantic) near Transco Village in Pittsylvania County, Virginia.

47.    As the MVP pipeline makes its way through the mountainous topography of West Virginia and Virginia, it will cut large swaths through hundreds of acres of forest, cross more than 1,000 bodies of water, and traverse miles of treacherous karst-laced terrain. In addition to its

substantial and devastating environmental impacts, the MVP pipeline will jeopardize the safety and economic livelihood of landowners along its path, assaulting their statutorily and constitutionally protected private property rights by taking hundreds of tracts of property for a private enterprise.

48.    In late October 2014, MVP initiated the pre-filing application process, an informal review period that enables a project sponsor to "vet" its proposal. At that time, MVP began contacting landowners to survey the properties to assist in preparation of its application and in some instances, to initiate negotiations on easement rights for the proposed pipeline.

49.    On October 23, 2015, following the conclusion of the pre-application process, MVP submitted its application under section 7 of the Natural Gas Act seeking a certificate of public convenience and necessity to construct, operate, and maintain the MVP project as well as a blanket certificate. In its application, MVP declared that its primary purpose for constructing the pipeline is to deliver shale gas to Transco Station 165, a gas-trading hub for the Mid-Atlantic Market and a strategic point for serving the growing Mid-Atlantic and southeastern markets, as well as unidentified "existing and future markets" directly along the pipeline route.

50.    At or around the time MVP filed its Application, its proposed pipeline was fully subscribed by affiliated shippers who are either producers

and marketers (accounting for 87 percent of contracted capacity) or affiliate utilities (committed to 13 percent of contracted capacity) as summarized in the table below:

**Table 2. All of the shippers on the Mountain Valley Pipeline are affiliates of companies involved in developing the project.**

| Pipeline owner | Ownership interest | Shipper | Capacity contracted (dekatherms/day) | Capacity contracted (%) |
|---|---|---|---|---|
| EQT Midstream Partners, LP | 45.5% | EQT Energy, LLC | 1,290,000 | 64.5% |
| NextEra Energy US Gas Assets, LLC | 31% | USG Properties Marcellus Holdings, LLC | 250,000 | 12.5% |
| Con Edison Gas Midstream, LLC | 12.5% | Consolidated Edison Company of New York | 250,000 | 12.5% |
| WGL Midstream, Inc. | 7% | WGL Midstream, Inc. | 200,000 | 10% |
| Vega Midstream MVP LLC | 3% | | | |
| RGC Midstream LLC | 1% | Roanoke Gas Company | 10,000 | 0.5% |

51.     On November 5, 2015, FERC published notice of MVP's Application.

52.     On September 16, 2016, FERC issued a Draft Environmental Impact Statement for the Project. The DEIS also concluded that the project would not export gas, notwithstanding comments that had identified a contract between WGL Midstream, one of the project shippers, to supply an Indian company with 430,000 dt/day of LNG gas.

53.     In May 2017, the Landowners attempted, through the Freedom of Information Act (FOIA) and FERC's Critical Energy Infrastructure Information (CEII) rules, to obtain additional documents that would

22

further corroborate the project's intended use for gas exports. FERC did not timely process their requests, which remain pending.

54.     On October 13, 2017, FERC issued a Certificate for the MVP Project and approved MVP's request for a blanket certificate under Part 157 of FERC's regulations, with the FERC Chair and one Commissioner voting to approve the certificate and one Commissioner dissenting. *Mountain Valley Pipeline*, 161 FERC ¶61,043 (2017). Condition 9 of the Certificate requires ACP to file documentation that it has received all applicable authorizations required under federal law (or evidence thereof) as a prerequisite to commencement of construction. As of the date of the Certificate, MVP had not received numerous federal authorizations including the section 401 water quality certificates from Virginia and U.S. Army Corps of Engineers' section 404 wetlands permit.

55.     Also relevant here, the Commission determined that its "public convenience and necessity finding" is equivalent to a "public use" (MVP Certificate Order at 61), but added that the question of the constitutionality of takings under the Certificate "is beyond our jurisdiction; only the courts can determine whether Congress' action in passing section 7(h) of the NGA conflicts with the Constitution. MVP Certificate Order at 63. With a certificate in hand, MVP has initiated condemnation actions against hundreds of landowners along the pipeline route in West Virginia and

Virginia under section 7f(h) of the Natural Gas Act, seeking immediate possession of the property in advance of the payment of compensation.

56.    Now that the Commission has declined jurisdiction over the constitutionality of the takings authorized by the projects and the takings are imminent, Plaintiffs seek relief before this Court on the claims below.

## CAUSES OF ACTION

**COUNT 1:  Declaratory Judgment That FERC's Practice of Granting Certificates Conditioned on Subsequent State or Federal Approvals—But Allowing for the Exercise of Eminent Domain—Exceeds FERC's Authority Under the Natural Gas Act.**

57.    Plaintiffs incorporate the preceding paragraphs by reference.

58.    15 U.S.C. §717f gives FERC "the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

59. FERC has an established pattern and practice of issuing certificates of public convenience and necessity for pipelines that are conditioned on subsequent state and federal approvals. (Both the MVP and ACP certificates contain such a condition. *See* MVP Certificate, Condition No. 9, ACP Certificate, Condition No. 10.)

60.    Congress did not delegate the power of eminent domain to private entities that have failed to obtain required state and federal

24

approvals for a natural-gas pipeline. Even FERC itself characterizes conditioned certificates as "incipient authorizations without force or effect."

61.    Because a conditioned certificate will never ripen into a final authorization if state and federal permits are denied, any taking of property under a conditioned certificate would be premature and unnecessary for the project—and would violate NGA §717f's requirement that takings be necessary and also raise serious constitutional problems, as explained in Count 4.

62.    The proper interpretation of "reasonable terms and conditions" in 15 U.S.C. §717f(e) is that FERC may impose "conditions" on pipeline activity in the sense of "limitations" but that certificates that are "conditional" in the sense of needing to satisfy prerequisites (and that, per FERC, are "incipient authorizations without force or effect") cannot support the exercise of eminent domain under the NGA.

63.    Plaintiffs seek a declaratory judgment that FERC's practice of issuing certificates conditioned on the issuance of state or federal approvals—while still purporting to allow the certificate holder to exercise eminent domain authority under 15 U.S.C. §717f(h)—violates the NGA.

**COUNT 2:  Declaratory Judgment That Certificate Holders (Including ACP and MVP) Whose Certificates Are Conditioned on Subsequent State or Federal Approvals Cannot Exercise the Power of Eminent Under the Natural Gas Act.**

25

64.    Plaintiffs incorporate the preceding paragraphs by reference.

65.    Plaintiffs seek a declaratory judgment that holders of conditional certificates (including ACP and MVP) cannot exercise the power of eminent domain under the NGA when their certificates are conditioned on subsequent state or federal approvals before pipeline construction can begin.

**COUNT 3:  Declaratory Judgment That 15 U.S.C §717f(h)'s "Any Holder of a Certificate of Public Convenience and Necessity" Language Does Not Include Holders of Certificates That Are Conditioned on Subsequent State or Federal Approvals.**

66.    Plaintiffs incorporate the preceding paragraphs by reference.

67.    As explained in Count 4 and elsewhere, FERC has a practice of issuing certificates of public convenience and necessity to applicants that have not yet obtained all necessary state and/or federal permits to commence construction.

68.    FERC takes the position that holders of such "conditional" certificates are entitled to exercise eminent domain under 15 U.S.C. §717f(h), which provides that "any holder of a certificate of public convenience and necessity" can acquire property by eminent domain.

69.    Plaintiffs seek a declaration that this interpretation of 15 U.S.C. §717f(h) is incorrect and that, under a correct interpretation of the

statute, only holders of non-conditional certificates are entitled to exercise eminent domain.

70.    This is the correct interpretation of 15 U.S.C. §717f(h) for two reasons.

    a. First, as FERC itself recognizes, conditional certificates are "incipient authorizations without force or effect." It follows that they cannot justify private entities' exercise of the awesome power of eminent domain.

    b. Second, as further explained in the following Count, permitting such conditional certificate holders to take private property creates significant constitutional concerns.

**COUNT 4:   Declaratory   Judgment   That   FERC's   Practice   of Granting Certificates Conditioned on Subsequent State or Federal Approvals—But Allowing for the Exercise of Eminent   Domain—Violates   the   Fifth   Amendment's Takings Clause.**

71.    Plaintiffs incorporate the preceding paragraphs by reference.

72.    The Fifth Amendment forbids the taking of private property if it is unnecessary for public use. An authorization of eminent domain under a conditioned certificate violates the Fifth Amendment because until the conditions are met, the property taken is unnecessary because the pipeline cannot construct the project.

27

73.    15 U.S.C. §717f gives FERC "the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

74.    FERC has an established pattern and practice of issuing certificates of public convenience and necessity for pipelines that are conditioned on subsequent state and federal approvals. (Both the MVP and ACP certificates contain such a condition. *See* MVP Certificate, Condition No. 9, ACP Certificate, Condition No. 10.)

75.    Congress did not delegate the power of eminent domain to private entities that have failed to obtain required state and federal approvals for a natural-gas pipeline. Even FERC itself characterizes conditioned certificate as an "incipient authorizations without force or effect."

76.    Because a conditioned certificate will ripen into a final authorization if state and federal permits are denied, any taking of property under a conditioned certificate is premature and unnecessary for the project, in violation of the Fifth Amendment's requirement that takings be for a "public use." Property is not taken for "public use" when the property is not needed for a project that has not received public approval and therefore will not be built.

28

77.    Plaintiffs seek a declaratory judgment that FERC's practice of issuing certificates conditioned on the issuance of state or federal approvals—while still purporting to allow the certificate holder to exercise eminent domain authority under 15 U.S.C. §717f(h)—violates the Fifth Amendment of the Constitution.

**COUNT 5:  Declaratory Judgment That, Under the Natural Gas Act, FERC Cannot Grant Certificates Whose Sole or Primary Purpose Is to Benefit Foreign Commerce.**

78.    Plaintiffs incorporate the preceding paragraphs by reference.

79.    Under 15 U.S.C. §717f, any certificate of convenience and necessity must be for the transportation "in interstate commerce" of natural gas.

80.    The Act defines "interstate commerce" as commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof, but only insofar as such commerce takes place within the United States."

81.    Plaintiffs seek a declaratory judgment that the Natural Gas Act does not allow FERC to grant certificates of convenience and necessity whose sole or primary purpose is to benefit foreign commerce.

**COUNT 6:  Declaratory Judgment That Granting "Blanket Certificates" Involving Property Located Outside the Certificated Project Exceeds FERC's Statutory Authority Under the Natural Gas Act.**

29

82.    Plaintiffs incorporate the preceding paragraphs by reference.

83.    Section 7(c) of the NGA bars "the construction or expansion of any facilities" for the transportation or sale of natural gas, or the acquisition or operation of any such facilities or extensions, unless the Commission issues a certificate specifically "authorizing such acts or operations." 15 U.S.C. §717f(c)(1)(A).

84.    The Commission's authority to grant a certificate under Section 7(c) is also limited to approval of an "operation, sale, service, extension, or acquisition *covered by the application*"—that is, the activity in question must have actually been "proposed" by the applicant and so considered by the Commission. *Id.* §717f(e) (emphasis added).

85.    Approval of particular activities is further restricted to those that, upon the Commission's finding, are or "will be required by the present or future public convenience and necessity." *Id.*

86.    Even so, FERC has arrogated to itself the power to issue "blanket certificates" under Part 157, Subpart F of its regulations to allow blanket certificate holders to perform certain routine construction activities and operations, including future facility construction, operation, and abandonment.

87.    Without any need for further Commission approval, the "blanket" certificate holder is allowed, subject only to a per-project cost

limitation just shy of $12 million, to do any of the following, among other "automatically authorized" acts:

- "acquire, construct, replace, or operate any eligible facility," defined to mean any facility within the Commission's statutory jurisdiction "that is necessary to provide service within existing certificated levels," subject to certain narrow exceptions, 18 C.F.R. §§157.208(a), 157.202(b)(2)(i);

- "make miscellaneous rearrangements of any facility," including "relocation of existing facilities" for various reasons including highway construction, erosion, or "encroachment of residential, commercial, or industrial areas," *id.* §§157.208(a), 157.202(b)(6);

- "acquire, construct, replace, modify, or operate any delivery point," *id.* §157.211(a)(1);

- "acquire, construct, modify, replace, and operate facilities for the remediation and maintenance of an existing underground storage facility," *id.* §157.213(a); and

- "acquire, construct and operate natural gas pipeline and compression facilities . . . for the testing or development of underground reservoirs for the possible storage of gas," *id.* §157.215.

88.    The "facilities" to which these activities apply include both "auxiliary" ones installed to "obtain[] more efficient or more economical operation" and replacements—but only to the extent that such "auxiliary" or replacement facilities are *not* located within the certificated pipeline right-of-way or an already authorized facility site. *See id.* §157.202(b)(3). That is, the grant of blanket authority is expressly—almost exclusively—directed toward projects that the Commission knows, to a

31

virtual certainty, will *not* be where the applicant describes the pipeline project as being located.

89.     In connection with these "blanket certificate" activities, the blanket certificate holder has effectively unrestricted authority to exercise eminent-domain power to force sales of private property, including of properties outside the areas described in the certificate holder's application. 15 U.S.C. §717f(h).

90.     Under the guise of "replacement" or "rearrangement," a certificate holder can even move segments of its main line to different property than the project footprint FERC has approved. And whenever it does so, the blanket-certificate holder can seize whatever property it wants from nearby landowners through eminent domain, without any oversight by FERC.

91.     FERC has granted such blanket certificates to MVP and ACP.

92.     In light of the application and finding requirements of the NGA, Plaintiffs seek a declaration that FERC's authority does not extend to blanket approvals of unknown future extensions, expansions, rearrangements, or replacements, at least where such actions are not limited to the pipeline footprint actually proposed by an applicant and considered and approved by FERC.

**COUNT 7: Declaratory     Judgment     That     Granting     "Blanket Certificates" Involving Property Located Outside the**

**Certificated Project Violates FERC's Statutory Mandate to Evaluate the Economic and Environmental Impacts of Proposed Projects.**

93.   Plaintiffs incorporate the preceding paragraphs by reference.

94.   FERC has a statutory mandate to ensure that a project satisfies the public necessity and convenience, an analysis which includes among other things, an evaluation of the proposed project's economic and environmental impacts as well as other factors that have bearing on the public interest. *See* 15 U.S.C. §717f(a) (projects must be in the public interest).

95.   By definition, however, whenever FERC grants a "blanket" certificate that authorizes construction outside a project footprint FERC has expressly evaluated and approved, FERC is authorizing the applicant to undertake a project that FERC has not determined is in the public convenience and necessity and that FERC has not evaluated for economic and environmental impact.

96.   Plaintiffs therefore seek a declaration that FERC's practice of granting "blanket" certificates—at least those that authorize construction outside evaluated and approved project footprints—violates FERC's statutory mandate to determine the public convenience and necessity including the economic and environmental impacts of proposed pipeline projects.

33

**COUNT 8:   Declaratory   Judgment   That   FERC's   Practice   of Granting   "Blanket   Certificates"   Violates   the   Natural Gas   Act's   Requirements   of   Notice   and   Hearing   on Expansions Not Contemplated in Initial Applications.**

97.    Plaintiffs incorporate the preceding paragraphs by reference.

98.    15   U.S.C.   §717f(a)   requires   "necessary"   expansions   and improvements   ordered   under   the   Act   to   be   issued   "after   notice   and opportunity for hearing" to all interested persons.

99.    Further, 15 U.S.C. §717f(c) requires a certificate of convenience and   necessity   for   all   acts   and   operations,   including   the   construction   and operation of any facilities or extensions thereof: "No natural-gas company or person   which   will   be   a   natural-gas   company   upon   completion   of   any proposed   construction   or   extension   shall   engage   in   the   transportation   or sale   of   natural   gas,   subject   to   the   jurisdiction   of   the   Commission,   or undertake the construction or extension of any facilities therefor, or acquire or   operate   any   such   facilities   or   extensions   thereof,   unless   there   is   in   force with respect to such natural-gas company a certificate of public convenience and   necessity   issued   by   the   Commission   authorizing   such   acts   or operations."

100.    Acts and operations, including the construction and operations of any facilities or extensions thereof, authorized under the Act are subject

to the notice and hearing requirements of 15 U.S.C. §717f(c), except that the Commission may issue temporary certificates in cases of emergency.

101.   Plaintiffs seek a declaration FERC's practice granting "blanket certificates" violates the Act's requirements of notice and hearing on expansions not contemplated in initial applications.

**COUNT 9:   Declaratory Judgment That FERC's Granting of "Blanket Certificates" Violates Plaintiffs' Procedural-Due-Process Rights Under the Fifth Amendment.**

102.   Plaintiffs incorporate the preceding paragraphs by reference.

103.   Plaintiffs seek a declaratory judgment that FERC's practice granting "blanket certificates"—which enables the blanket certificate holder to exercise eminent domain for property interests not specified in a certificate application—violates the procedural-due-process rights of Plaintiffs and other interested parties under the Due Process Clause of the Fifth Amendment.

**COUNT 10: Declaratory Judgment That the Grant of Blanket Certificates, by Which the Certificate Holder May Exercise Eminent Domain, Violates Constitutional Separation-of-Powers Doctrines, Including the Private Nondelegation Doctrine.**

104.   Plaintiffs incorporate the preceding paragraphs by reference.

105.   By statute, a natural-gas company may not condemn property that is not specifically described in its existing FERC certificate, even if the

natural-gas company seeks to acquire such property in order to operate and maintain an existing pipeline facility.

106.   "A distinction exists" between statutes that "authorize officials to exercise the sovereign's power of eminent domain on behalf of the sovereign itself" and "statutes which grant to others, such as public utilities, a right to exercise the power of eminent domain on behalf of themselves." *United States v. Carmack*, 329 U.S. 230, 243 n.13 (1946). Section 7(h) of the NGA is, by its nature, a "grant[] of limited powers." *Id.*

107.   Plaintiffs seek a declaration that the certificate's "blanket authorization," coupled with Section 7(h)'s limited conferral of eminent-domain authority, grants to a blanket certificate holder precisely the type of "unrestrained ability to decide" to take another citizen's property that the private nondelegation doctrine and other separation-of-powers doctrines forbid and that such blanket certificates therefore violate the U.S. Constitution.

**COUNT 11:   Declaratory Judgment That FERC's Granting of Certificates to Private, Nongovernmental Entities Without Ensuring the Entities Have Adequate Assets Sufficient to Guarantee Payment of Just Compensation Violates the NGA.**

108.   Plaintiffs incorporate the preceding paragraphs by reference.

109.   The Takings Clause of the Fifth Amendment requires the payment of "just compensation" when private property is taken for public

36

use. Any act granting condemnation power must provide for compensation with absolute certainty.

110.   "The owner is entitled to reasonable, certain, and adequate provision before his occupancy is disturbed." *Sweet v. Rechel*, 159 U.S. 380, 403 (1895). Proving "adequate provision" of just compensation requires showing that "the means for securing indemnity [are] such that the owner will be put to no risk or unreasonable delay." *Id.* at 401. And a statute that "attempts to authorize the appropriation of public property for public uses, without making adequate provision for compensation, is unconstitutional and void and does not justify an entry on the land of the owner without his consent." *Id.* at 402.

111.   Unlike government condemnors, which may rely on the full faith and credit of the public fisc, private companies seeking the power of eminent domain (including applicants for FERC certificates) must do much more than just promise to pay the full measure of just compensation that the Constitution guarantees to property owners.

112.   To satisfy the Just Compensation Clause, the private, nongovernmental condemnor must (1) have the ability to be sued and (2) own such substantial assets that just compensation is, to a virtual certainty, guaranteed by payment from an adequate fund.

113. FERC does not make such inquiries before granting certificates, which open the door to the exercise of eminent domain.

114. MVP is a Delaware limited-liability company and is a special-purpose, joint-venture entity set up in 2015 for the sole purpose of creating the MVP Project. MVP does not currently own or operate any interstate pipeline facilities and currently has no existing customers. MVP's owner-operator has already admitted in an SEC filing that MVP "has insufficient equity to finance its activities during the construction stage of the project."

115. Like MVP, ACP is a fledgling joint-venture LLC set up specifically for a single pipeline project. According to a 2016 SEC filing by ACP's 40% owner (Duke Energy), ACP has "insufficient equity to finance [its] own activities without subordinated financial support." Even so, as indicated in its filing, Duke "does not have . . . the obligation to absorb losses" of ACP. ACP's other principal owner—Dominion, which owns a 45% membership interest in ACP—likewise concluded in a 2016 SEC filing that ACP "has insufficient equity to finance its activities without additional subordinated financial support." And, like Duke, Dominion has not made any financial guarantees to ensure payment of just compensation: "Dominion's maximum exposure to loss is limited to its current and future investment."

38

116.   As private, for-profit companies, MVP and ACP could go bust or otherwise become unable to pay just-compensation awards.

117.   Accordingly, to avoid constitutional problems under the Takings Clause, Plaintiffs seek a declaratory judgment that a "holder of a certificate of public convenience and necessity" under the eminent-domain provisions of 15 U.S.C. §717f(h) refers to an entity that has demonstrated in its FERC application that it (1) has the ability to be sued and (2) owns such substantial assets that just compensation is, to a virtual certainty, guaranteed by payment from an adequate fund.

**COUNT 12: Declaratory Judgment That FERC's Granting of Certificates to Private, Nongovernmental Entities Without Ensuring the Entities Have Adequate Assets Sufficient to Guarantee Payment of Just Compensation Violates the Fifth Amendment's Takings Clause.**

118.   Plaintiffs incorporate the above paragraphs by reference.

119.   If the Court does not grant the declaratory judgment sought in Count 11, Plaintiffs seek a declaratory judgment that 15 U.S.C. §717f(h) is unconstitutional as applied to Plaintiffs, since neither FERC, nor MVP, nor ACP has shown that the certificate holders both (1) have the ability to be sued and (2) own such substantial assets that just compensation is, to a virtual certainty, guaranteed by payment to Plaintiffs from an adequate fund.

39

**COUNT 13: Declaratory Judgment That 15 U.S.C. §717f Does Not Allow for "Quick-Take" Condemnations.**

120.    Plaintiffs incorporate the preceding paragraphs by reference.

121.    15 U.S.C. §717f(h) provides: "When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts."

122.    The NGA does not provide for quick-takes—i.e., allowing a condemnor to take the property at issue before the amount of just compensation is finally decided.

123.    Congress has authorized quick-takes by the federal government and for certain other entities in particular situations (*see, e.g.*, 40 U.S.C. §3114), but has not done so under the NGA.

124.   Even so, certificate holders have frequently—and oftentimes successfully—invoked FERC certificates as a ground for courts to authorize "quick-take" (rather than "straight") condemnations.

125.   FERC cannot grant any greater power to certificate holders than what Congress has authorized under the NGA.

126.   Congress is the sole keeper of the U.S. government's sovereign power of eminent domain, and neither FERC nor the judiciary have power to expand the use of that power by natural-gas companies beyond the grant of eminent-domain authority that Congress conferred under the NGA.

127.   Accordingly, Plaintiffs seek a declaratory judgment that 15 U.S.C. §717f does not authorize quick-take condemnations.

## COUNT 14: Declaratory Judgment That FERC Certificates That Allow "Quick-Take" Condemnations Are Unconstitutional.

128.   Plaintiffs incorporate the preceding paragraphs by reference.

129.   If FERC certificates allowing quick-take condemnations do not violate the NGA itself, then such certificates are unconstitutional grants of eminent-domain power that encroach on Congress's legislative power, violating constitutional separation-of-powers principles such as the Vesting Clause of Article I, section 1 of the Constitution.

130.   Further, to the extent the judiciary reads such FERC certificates as supporting or allowing quick-take condemnations and issues

41

orders allowing quick-takes, the judiciary encroaches on Congress's power to define the scope of the eminent-domain authority conferred on natural-gas companies.

131.   Plaintiffs seek a declaration that FERC certificates allowing "quick-take" condemnations—or judicial orders blessing quick-take condemnations under the NGA—violate separation-of-powers doctrines and are therefore unconstitutional.

**COUNT 15: Declaratory Judgment That FERC's Refusal to Afford Impacted Landowners Access to Confidential and Privileged Filings by the Applicant To Allow Them To Challenge Public Need Violates Landowners' Due-Process Rights.**

132.   Plaintiffs incorporate the preceding paragraphs by reference.

133.   CCN applicants routinely file confidential and privileged information in support of their application that is also relevant to the project's public use and necessity. Without this information, landowners are unable to effectively challenge the public use or need for the project.

134.   The Plaintiffs have requested from FERC certain critical documents filed by MVP and ACP, which MVP and ACP contend are confidential and privileged. These critical documents have not been disclosed.

135.   Plaintiffs seek a declaration that FERC's reliance on such allegedly confidential and privileged information withheld from impacted

42

landowners violates their due-process rights by depriving them of a meaningful opportunity to challenge project use and rebut the Commission's findings of public need.

**COUNT 16: Declaratory Judgment That FERC's Refusal to Consider Constitutional Questions Violates Landowners' Fifth Amendment Due-Process Rights.**

136.    Plaintiffs incorporate the preceding paragraphs by reference.

137.    Section 7r of the Natural Gas Act provides a mechanism for parties to a FERC proceeding to seek rehearing and subsequently judicial review of an adverse FERC ruling.

138.    Section 7r governs review of only FERC orders. Critically, FERC contends that review under Section 7r does not extend to determinations of the constitutionality of the Natural Gas Act and the exercise of eminent domain thereunder. FERC claims that such matters are outside the scope of its jurisdiction. *See* MVP Order at 61, ACP Order at 81.

139.    As a result, landowners cannot raise constitutional challenges to proposed pipeline projects in FERC. Rather, they have to wait until after FERC has issued a certificate and denied rehearing before they can raise those challenges in the first instance in federal appellate courts.

140.    By that point, though, the damage is done, as certificated pipeline companies have often long since taken property and commenced construction, irreversibly altering the landowners' property.

141.   Plaintiffs seek a declaration that, by denying landowners any opportunity to raise constitutional challenges until after their property is already taken and irreversibly altered, FERC denies those landowners the due process of law required by the Fifth Amendment.

**COUNT 17: Declaratory Judgment That Prohibiting Non-Intervening Landowners from Challenging FERC Orders Violates Those Landowners' Due-Process Rights.**

142.   Plaintiffs incorporate the preceding paragraphs by reference.

143.   The remedies in NGA section 7r are unavailable to impacted landowners who did not intervene in the FERC process but who nevertheless stand to be deprived of their property rights without fair notice. *See* 15 U.S.C. §717f(r)

144.   Neither section 7r nor FERC policies require landowners to intervene to participate in the certificate program before FERC. And the notice provided to landowners by FERC, MVP, and ACP did not warn landowners that failure to intervene might result in a waiver of their right to mount statutory, constitutional, and other legal challenges to the taking of their property.

145.   At least nine of the landowner Plaintiffs in this proceeding did not intervene in the FERC process, yet, without fair notice, stand to lose property rights by eminent domain. Confining these landowners to the remedies under section 717r, which are now unavailable to them, would

44

deprive them of due process in the taking of their property, as they would be unable to raise certain statutory, constitutional, and other legal challenges related to the takings.

146.   Plaintiffs therefore seek a declaratory judgment that requiring resolution of constitutional questions through FERC under the terms of the Natural Gas Act violates landowners' Fifth Amendment due-process rights.

## PRAYER FOR RELIEF

147.   Plaintiffs incorporate all of the paragraphs set forth above and respectfully pray for the following relief:

A.    the declaratory relief requested above;

B.    an injunction preventing MVP and ACP from proceeding with development of their respective projects or moving forward with eminent-domain actions under their constitutionally and statutorily deficient certificates;

C.    an injunction preventing MVP and ACP from exercising eminent-domain power under a certificate of convenience and necessity that is conditioned on the receipt of federal or state authorizations;

D.    in the alternative, an invalidation of the blanket authority granted to ACP or MVP under their respective blanket certificates in excess of demonstrated and certificated need;

45

F.     in the alternative, an order granting Plaintiffs discovery on MVP's and ACP's plans to transport gas for export and other issues relevant to Plaintiffs' claims;

G.     attorneys' fees, other costs and such other relief as the Court deems appropriate and just.

Respectfully submitted,

*Carolyn Elefant*

_____
Carolyn Elefant D.C. Bar #265433
Law Offices of Carolyn Elefant PLLC
2200 Pennsylvania Ave., 4th Flr. E
Washington, D.C. 20037
202-297-6100
carolyn@carolynelefant.com

# ATTACHMENT 1
# LANDOWNER LIST

| Landowner Name(s) | Your property is in route of which proposed pipeline? | Affected Property Address | Area of Land Impacted And/Or Subject to Taking |
|---|---|---|---|
| Carolyn Maki, William Maki, EJ Maki | ACP | 2228 Rockfish Valley Highway | 5 acres |
| James and Katherine McLean | ACP | 696 Vance Lane Warm Springs, VA | 2 acres |
| Louis & Yvette Ravina | ACP | 3383 Churchville Ave Staunton  VA  24401 Permanent ROW: 6.02A Temp ROW: 3.92A Extra Work Space: 0.63 Agricultural Lands Area: 1.39A Water Impoundment Area: 2.07A Total: 14.03 Acres | 3528 Linear Ft |
| Richard (Dick) Averitt III | ACP | On route 151 across from Bold Rock | 100 acres |
| William S. Moore and Carol M. Moore trustees of the Moore Revocable Trust | ACP | 2594 Bryant Mountain Road, Roseland, VA  22967 | 39 acres to include a stone mountain home and three additional building sites with 50 mile views |
| William S. Moore and Carol M. Moore trustees of the Moore Revocable Trust | ACP | 2594 Bryant Mountain Road, Roseland, VA  22967 | 39 acres |
| Hershel and Darlene Spears | ACP | 2215 Spruce Creek Lane, Nellysford, VA  22958 | 5 acres |
| Jonathan Ansell and Pamela Farnham | ACP | 159 Fortune's Point Lane, Roseland VA 22967 | 1.8 acres for permanent easement; additional 2 -4 for temporary workspace. |
| Lora & Victor Baum | ACP | 368 Fern Gully Lane Warm Springs, VA 24484 | ? about an acre? It runs across the entire length of our 31 acre property |
| Demian K. Jackson; Bridget K. Hamre (as members of Nelson County Creekside, LLC ) | ACP | 106 Starvale Lane., Shipman, VA 22971 | 6 AC in permanent right away (bisecting 105 AC with entire property in blast zone) |
| Horizons Village Property Owners Association | ACP | Common land and roads within Horizons Village Subdivision in Nelson County.  No street address.  Our mailing address is P.O. Box 122 Nellysford VA 22958 | ~2 acres plus use of private roads |

| | | | |
|---|---|---|---|
| Anne and Ken Norwood | ACP | 3509 Stagebridge Rd Lovingston VA 22949 | 1/4 mile |
| carolyn fischer | ACP | 184 mountain field trail Nellysford, Va | 1/4 acre |
| Pearl L. Finch | ACP | near intersection of NC HWY 581 and Renfrow Road, Wilson County, NC | 1 acre+ or - |
| Heather Louise Finch | ACP | near intersection of NC HWY 581 and Renfrow Road, Wilson County, NC | 1-2 acres +/- |
| Wade Raymond Finch | ACP | near intersection of NC HWY 581 and Renfrow Road, Wilson County, NC | 1-2 acres (+ or - ) |
| Randy and Kathleen Forbes | ACP | TBD Deerfield Rd   Millboro, VA | 5 acres |
| Todd Rath | ACP | 462 Winery Lane Roseland VA 22967 | 2 acres |
| W. Marvin Winstead, Jr. | ACP | 540 Sandy Cross Rd. , Nashville, NC 27856 | 70 acres |
| Friends of Nelson on behalf of Nelson County Landowners and Membership | ACP | numerous in Nelson County | numerous in Nelson County |
| Susan Lazerson & Clifford Savell | ACP | 14 Crystal Lane,  Faber,  VA 22938 | 100 yards of access road |
| Bill and Lynn Limpert | ACP | 250 Fern Gully Lane Warm Springs, VA 24484 | About 10 acres |
| Wade A. & Elizabeth G. Neely | ACP | 10190 Deerfield Road, Millboro, Virginia 24460 | Parcel affected has 127 acres in it. |
| Nancy L Avery | ACP | My address: 195 Flying Eagle Ct. Nellysford, VA. Affected property is: Nelson County Tax Map 21 13 14A - a vacant lot I own. | One tenth of an acre. |

| | | | |
|---|---|---|---|
| Nancy & Shahir Kassam-Adams | ACP | 360 Laurel Lane,  Lovingston VA 22949 | 4.6 linear acres (according to ACP) with major impact on 2 parcels totaling 55 acres |
| Robert turner stephanie barton | ACP | 6237 laurel Rd, Faber, VA 22971 (rt 639 tax map 59 a 29 30 31) | Six acres. |
| James A. Hardee | ACP | Heathsville Rd. Enfield N.C. 27823 | 7.5 acres |
| James A.Hardee | ACP | 8431 Heathsville Rd., Enfield, N.C. 27823 | 8.5 acres |
| Hazel Rhames (trustee - Joe Rhames) | ACP | Gullysville Lane | 9 acres of a 125 acre parcel |
| Joe Poland | ACP | 5740 Old Bailey Hwy, Nashville NC  27856 | 40 acres |
| Dawn Averitt | ACP | 330 Grace Glen, Nellysford, VA 22958 | 73 acres |
| Mary Ellen Rives | MVP | 10239 Bottom Creek Road, Bent Mountain, VA. 24059 | 10 acres |
| Anne Way and Stephen Bernard | MVP | 7879 Grassy Hill Rd    Boones Mill  VA   24065 | technically, about an acre |
| Georgia Haverty; Doe Creek Farm | MVP | 412 Doe Creek Farm Road | 4 acres (direct) 400 acres (indirect) |
| Brenda Lynn Williams | MVP | 261 Winding Way Drive, Newport, VA  24128 | 69.5 acres owned by 7 generations |
| Serina Garst, President of Occanneechi, Inc. | MVP | 1600 Cahas Mountain Road (farm land - no actual street address) | I would estimate that approximately 100 acres or more would be impacted by the pipeline.  MVP is seeking easements for 11.5 acres for the Right of Way and 17.2 for temporary easements. |
| Jerry & Jerolyn Deplazes | MVP | 291 Seven Oaks Road, Newport VA 24128-3558 | 2.8 acres permanent ROW/4.2 acres temporary ROW |
| Newport Development Company, LLC | MVP | Winding Way Road, Newport VA 24128 | 2.95 acres permanent ROW; 4.43 acres temporary ROW |

| | | | |
|---|---|---|---|
| Clifford A. Shaffer | MVP | 249 Brookside Lane, Newport VA 24128 | 1200 linear feet |
| Tamara Hodsden | MVP | 237 Clover Hollow Rd. Newport, Va. 24128 | 2 acres |
| Frank S and Katherine A Quinn | MVP | 215 Zells Mill Rd., Newport, Va. 24128 | two acres |
| Charles F Flora & Stephanie M Flora | MVP | 1906 Arden Rd SW Roanoke VA 24015 | 5 acres |
| Charles F Flora & Stephanie M Flora | MVP | Cahas Mountain Road; Tax Map Id - 038 00-020 02 | 5 acres |
| Benny L. Huffman | MVP | 606 Blue Grass Trail, Newport VA 24128-3556, Tract # VA-GI-5779 | Access Road right of way |
| Ian Elliott Reilly & Carolyn Elizabeth Reilly and Dave J. Werner & Betty B. Werner | MVP | 404 Old Mill Creek Lane, Rocky Mount, VA 24151 | 4 acres directly impacted, but would lose access to bottom land pasture; approximately 17 acres |
| Mary E. and Bruce M. Coffey | MVP | 10303 Russwood Road,   Bent Mountain Virginia | 3.5 acres |
| Jacqueline J. Lucki | MVP | 10289 Russwood Road, Bent Mountain Virginia 24059 | 17 acres |
| David G. and Karen M. Yolton | MVP | 8165 Virginia Ave., Newport, VA 24128 | twenty acres |
| Clarence B. Givens and Karolyn W. Givens | MVP | 199 Leffel Lane, Newport Virginia 24128 | 3 |
| Walter and jane embrey | MVP | 495 Signal Hill Drive, Callaway, Va 24067 | 100 sq ft |
| Guy W, and Margaret S. Buford | MVP | 985 Iron Ridge Rd. Rocky Mount, VA 24151 | 5-6 acres |
| Rebecca J Dameron | MVP | 10721 Bent Mountain Road Bent Mountain, VA  24059 | 1/2 acre |
| Keith wilson | MVP | 887 Labellevue drive, boones Mill, va. 24065 | 16 acres (approx 1 acre on proposed route) |
| Frank and Jacqueline Biscardi | MVP | 128 Labellevue Drive | 1-5 acres |

| | | | |
|---|---|---|---|
| Wendell & Mary Flora | MVP | 150 Floradale Farms Lane, Boones Mill, VA 24065 | 55 acres total farm land |
| Reinhard & Ashofteh Bouman | MVP | 282, Ashwood Dr.,  Meadow Bridge, WV 25976 | Length of possible access road is approximately 1,100 ft |
| James Gore | MVP | 6355 Blue Lick Road, Greenville, WV 24945 | 228 acres |
| Mike Craig | ACP | 5464 Wheelers Cove Rd., Shipman, VA 22971 | |
| Gerald & Elizabeth Wozniak | ACP | 22344 Governor Harrison Pkwy., Freeman, VA 23856 | .5 acres |
| Chris & Emily Prosise | ACP | 4054 White Oak Rd., Blackstone, VA 23824 | 900 acres |
| Judy Allen | ACP | 10027 Dry Run Road, Burnsville, VA 24487 | |
| Keith & Merrifield Ehrhard | ACP | Lot 44, Treehouse Place, Horizon Village, Nellysford, VA 22958 | access road, 300 ft. easement on common land |
| Irene S. Ellis, Trustee, Randolph H. Leech, Irene E. Leech, Margaret Anne Martin, Timothy Martin | ACP | 9161 West James Anderson Hwy., Buckingham, VA 23921 | approx. 1 mile |
| John C. Geary | ACP | 714 Hotchkiss Rd., Churchville, VA 24421 | .1 acre |
| George Sproul | ACP | 744 West Augusta Rd., West Augusta, VA 24485 | < 1 acre |

**ATTACHMENT 2**

**FERC MVP AND ACP NOTICES**

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Mountain Valley Pipeline LLC                    Docket No.   CP16-10-000
Equitrans LP                                    Docket No.   CP16-13-000

NOTICE OF SCHEDULE FOR ENVIRONMENTAL REVIEW
OF THE MOUNTAIN VALLEY PIPEINE PROJECTAND
THE EQUITRANS EXPANSION PROJECT

(June 28, 2016)

On October 23, 2015, Mountain Valley Pipeline LLC (Mountain Valley) filed its application with the Federal Energy Regulatory Commission (FERC or Commission) in Docket No. CP16-10-000, requesting a Certificate of Public Convenience and Necessity pursuant to Section 7(c) of the Natural Gas Act to construct, operate, and maintain certain natural gas pipeline facilities.  Equitrans LP (Equitrans) filed a companion application on October 27, 2015 in Docket No. CP16-13-000.   The proposed Mountain Valley Pipeline Project, in West Virginia and Virginia, would transport about 2 billion cubic feet per day (Bcf/d) of natural gas from production areas in the Appalachian Basin to markets on the East Coast.  The proposed Equitrans Expansion Project, in Pennsylvania and West Virginia, would transport about 0.4 Bcf/d of natural gas and interconnect with the Mountain Valley Pipeline.  Because these are interrelated projects, the FERC staff deemed it was appropriate to analyze them in a single environmental impact statement (EIS).

On November 5, 2015, the FERC issued its Notice of Application for the projects. Among other things, that notice alerted other agencies issuing federal authorizations of the requirement to complete all necessary reviews and to reach a final decision on the request for a federal authorization within 90 days of the date of issuance of the Commission staff's final EIS for the projects.  This instant notice identifies the FERC staff's planned schedule for completion of the final EIS for the projects, which is based on an issuance of the draft EIS in September 2016.

**Schedule for Environmental Review**

Issuance of Notice of Availability of the final EIS            March 10, 2017
90-day Federal Authorization Decision Deadline               June 8, 2017

If a schedule change becomes necessary for the final EIS, an additional notice will be provided so that the relevant agencies are kept informed of the projects' progress.

Docket No. CP16-10-000, *et al.*

## Project Description

The Mountain Valley Pipeline Project would consist of about 301 miles of new 42-inch-diameter pipeline, beginning at the Mobley Interconnect and receipt meter station in Wetzel County, West Virginia, and terminating at the Transco Interconnect and delivery meter station at the existing Transcontinental Gas Pipe Line Company Compressor Station 165 in Pittsylvania County, Virginia. In addition, Mountain Valley intends to construct and operate three new compressor stations and other aboveground facilities.

The Equitrans Expansion Project would consist of a total of about 8 miles of various diameter pipelines in six segments. These segments include the parallel 12-inch-diameter H-158 pipeline and 6-inch-diameter M-80 pipeline extending about 0.2-mile each in Greene County, Pennsylvania; the 24-inch-diameter H-305 pipeline that would extend about 540 feet in Greene County; the 3-mile-long new 30-inch-diameter H-316 pipeline in Greene County; the 4.2-mile-long new 20-inch-diameter H-318 pipeline in Allegheny and Washington Counties, Pennsylvania; and the new H-319 pipeline that would extend about 200 feet in Wetzel County, West Virginia. Equitrans also proposes to abandon its existing Pratt Compressor Station and replace it with the new Redhook Compressor Station in Greene County, Pennsylvania; and to construct and operate taps in Greene County and Washington County, Pennsylvania, and an interconnect and two taps in Wetzel County, West Virginia,

## Background

On October 31, 2014 and April 9, 2015, the Commission staff granted Mountain Valley's and Equitrans' requests to use the FERC's pre-filing environmental review process and assigned the Mountain Valley Pipeline Project temporary Docket No. PF15-3-000 and the Equitrans Expansion Project temporary Docket No. PF15-22-000. The FERC issued a *Notice of Intent to Prepare and Environmental Impact Statement for the Planned Mountain Valley Pipeline Project, Request for Comments on Environmental Issues, and Notice of Public Scoping Meetings* (NOI) on April 17, 2015. An NOI for the Equitrans Expansion Project was issued on August 11, 2015, with a scoping period for that project that ended on September 14, 2015.

The NOIs were issued during the pre-filing review of the projects, and were sent to our environmental mailing list that included federal, state, and local government agencies; elected officials; affected landowners; regional environmental groups and non-governmental organizations; Native Americans and Indian tribes; local libraries and newspapers; and other interested parties. The Mountain Valley Pipeline Project NOI announced the date, time, and location of six public meetings sponsored by the FERC in the project area, and a scoping period that ran to June 16, 2015 to take comments on the project. Some of the major issues raised during scoping included potential impacts on

Docket No. CP16-10-000, *et al.*

karst terrain and caves; impacts on groundwater and springs, drinking water supplies, and surface waterbodies; impacts on forest; impacts on property values and the use of eminent domain; impacts on tourism; impacts on public recreational areas such as the Jefferson National Forest, Appalachian National Scenic Trail, and the Blue Ridge Parkway; impacts on historic districts; and pipeline safety.

The United States (U.S.) Department of Agriculture Forest Service, Jefferson National Forest; U.S. Army Corps of Engineers, Huntington and Norfolk Districts; U.S. Department of the Interior, Bureau of Land Management; U.S. Environmental Protection Agency, Region 3; Pipeline and Hazardous Materials Safety Administration within the U.S. Department of Transportation; West Virginia Department of Environmental Protection; and West Virginia Division of Natural Resources are cooperating agencies in the preparation of the EIS.

## Additional Information

In order to receive notification of the issuance of the EIS and to keep track of all formal issuances and submittals in specific dockets, the Commission offers a free service called eSubscription (http://www.ferc.gov/docs-filing/esubscription.asp). Additional data about the projects can be obtained electronically through the Commission's Internet website (www.ferc.gov). Under "Dockets & Filings," use the "eLibrary" link, select "General Search" from the menu, enter the docket numbers excluding the last three digits (i.e., CP16-10 or CP16-13), and the search dates. Questions about the projects can be directed to the Commission's Office of External Affairs at (866) 208-FERC.

Kimberly D. Bose,
Secretary
.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Atlantic Coast Pipeline, LLC                                    Docket Nos. CP15-554-000
                                                                                       PF15-6-000
Dominion Transmission, Inc.                                                CP15-555-000
                                                                                       PF15-5-000
Atlantic Coast Pipeline, LLC and Piedmont Natural Gas Company, Inc.    CP15-556-000

NOTICE OF APPLICATION

(October 2, 2015)

     Take notice that on September 18, 2015, Atlantic Coast Pipeline, LLC (ACP), 120
Tredgar Street, Richmond, Virginia  23219 filed an application under section 7(c) of the Natural
Gas Act and Part 157 of the Commission's regulations requesting authorization to install,
construct, own, operate and maintain certain natural gas pipeline facilities for its Atlantic Coast
Pipeline project consisting of: i) approximately 564.1 miles of various diameter pipeline; ii) three
greenfield compressor stations totaling 117,545 horsepower (HP) of compression; and iii)
various appurtenant and auxiliary facilities designed to transport up to approximately 1.5 million
dekatherms per day (MMDth/d) of natural gas.  Facilities to be constructed are located in
Harrison, Lewis, Upshur, Randolph, and Pocahontas Counties, West Virginia; Highland,
Augusta, Nelson, Buckingham, Cumberland, Prince Edward, Nottoway, Dinwiddie, Brunswick,
Greensville and Southampton Counties and the Cities of Suffolk and Chesapeake, Virginia; and
Northampton, Halifax, Nash, Wilson, Johnston, Sampson, Cumberland and Robeson Counties,
North Carolina.  Additionally, ACP is seeking Blanket Certificates of public convenience and
necessity pursuant to Part 284, Subpart G authorizing the transportation of natural gas for others,
and Part 157, Subpart F authorizing certain facility construction, operation and abandonment
activities, all as more fully described in the application.

     In a related filing, on September 18, 2015, Dominion Transmission, Inc. (DTI), 707 East
Main Street, Richmond, Virginia 23219, filed under sections 7(b) and 7(c) of the Natural Gas
Act and Part 157 of the Commission's regulations requesting authorization to abandon, install,
construct, own, operate and maintain certain natural gas pipeline facilities for its Supply Header
Project (Supply Header) located in Westmoreland and Greene Counties, Pennsylvania; and
Harrison, Doddridge, Tyler, Wetzel, and Marshall Counties, West Virginia.  The Supply Header
would provide transportation service of approximately 1.5 MMDth/d from supply areas on the
DTI system for delivery to the ACP.  The Supply Header facilities would consist of: i) two
pipeline loops of 30-inch diameter pipeline totaling 37.5 miles; ii) added compression at three
existing compressor stations totaling  70,530 HP; and iii) various appurtenant and auxiliary
facilities.  DTI also proposes to abandon two compressor units in Wetzel County, West Virginia,
all as more fully described in the application.

     Finally, on September 18, 2015, ACP and Piedmont Natural Gas Company, Inc.
(Piedmont), 4720 Piedmont Row Drive, Charlotte, North Carolina 28210, filed a joint
application under section 7(c) of the NGA and Part 157 of the Commission's regulations seeking

authorization of a lease pursuant to which ACP will lease capacity (Lease) on Piedmont's system for use by ACP in providing service under its FERC Gas Tariff, primarily for the Public Service Company of North Carolina, Inc.  Piedmont, a local distribution company (LDC), also requests a limited jurisdiction certificate in order to enter into the Lease with ACP for the interstate transportation of gas through Piedmont's facilities.  Piedmont also requests a determination that the Lease will not affect its status and a LDC not otherwise subject to Commission regulation, all as more fully described in the application.

The filings may also be viewed on the web at http://www.ferc.gov using the "eLibrary" link.  Enter the docket number excluding the last three digits in the docket number field to access the document.  For assistance, please contact FERC at FERCOnlineSupport@ferc.gov or toll free at (866) 208-3676, or TTY, (202) 502-8659.

Any questions regarding ACP's or DTI's projects should be directed to Angela Woolard, Gas Transmission Certificates, Dominion Transmission, Inc., 701 East Cary Street, Richmond, Virginia  23219; telephone:  866-319-3382.

Any questions regarding the ACP – Piedmont Lease should be directed to Matthew Bley, Director, Gas Transmission Certificates, Dominion Transmission, Inc., 701 East Cary Street, Richmond, Virginia  23219; telephone:  866-319-3382.

On November 13, 2014, the Commission staff granted ACP's and DTI's requests to utilize the National Environmental Policy Act (NEPA) Pre-Filing Process and assigned Docket Nos. PF15-6-000 and PF15-5-000, respectively to staff activities involving the combined Atlantic Coast Pipeline and Supply Header projects.  Now, as of the filing of the applications on September 18, 2015, the NEPA Pre-Filing Process for this project has ended.  From this time forward, this proceeding will be conducted in Docket No. CP15-554-000 for the Atlantic Coast Pipeline and CP15-555-000 for DTI's Supply Header project, as noted in the caption of this Notice.

Within 90 days after the Commission issues a Notice of Application for the ACP, Supply Header and ACP – Piedmont Lease projects, the Commission staff will issue a Notice of Schedule for Environmental Review that will indicate the anticipated date for the Commission's staff issuance of the final EIS analyzing both the three proposals.   The issuance of a Notice of Schedule for Environmental Review will also serve to notify federal and state agencies of the timing for the completion of all necessary reviews, and the subsequent need to complete all federal authorizations within 90 days of the date of issuance of the Commission staff's final EIS.

There are two ways to become involved in the Commission's review of this project.  First, any person wishing to obtain legal status by becoming a party to the proceedings for this project should, on or before the comment date stated below, file with the Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426, a motion to intervene in accordance with the requirements of the Commission's Rules of Practice and Procedure (18 CFR 385.214 or 385.211) and the Regulations under the NGA (18 CFR 157.10).  A person obtaining party status will be placed on the service list maintained by the Secretary of the Commission and will receive

Docket No. CP15-554-000, *et al.*            - 3 -

copies of all documents filed by the applicant and by all other parties.  A party must submit 7 copies of filings made with the Commission and must mail a copy to the applicant and to every other party in the proceeding.  Only parties to the proceeding can ask for court review of Commission orders in the proceeding.

However, a person does not have to intervene in order to have comments considered. The second way to participate is by filing with the Secretary of the Commission, as soon as possible, an original and two copies of comments in support of or in opposition to this project. The Commission will consider these comments in determining the appropriate action to be taken, but the filing of a comment alone will not serve to make the filer a party to the proceeding.  The Commission's rules require that persons filing comments in opposition to the project provide copies of their protests only to the party or parties directly involved in the protest.

Persons who wish to comment only on the environmental review of this project should submit an original and two copies of their comments to the Secretary of the Commission. Environmental commenters will be placed on the Commission's environmental mailing list, will receive copies of the environmental documents, and will be notified of meetings associated with the Commission's environmental review process.  Environmental commenters will not be required to serve copies of filed documents on all other parties.  However, the non-party commenters will not receive copies of all documents filed by other parties or issued by the Commission (except for the mailing of environmental documents issued by the Commission) and will not have the right to seek court review of the Commission's final order.

The Commission strongly encourages electronic filings of comments, protests and interventions in lieu of paper using the "eFiling" link at http://www.ferc.gov.  Persons unable to file electronically should submit an original and 5 copies of the protest or intervention to the Federal Energy regulatory Commission, 888 First Street, NE, Washington, DC 20426.

Comment Date: 5:00pm Eastern Time on October 23, 2015

Kimberly D. Bose,
Secretary.